**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

AMERICAN ACADEMY OF HIV MEDICINE; et al.,

*Plaintiffs*,

v.

HEALTH RESOURCES AND SERVICES ADMINISTRATION; et al.,

*Defendants*.

Case No. 1:26-cv-12638-WGY

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO PERMIT ASSOCIATIONAL PLAINTIFFS' MEMBERS TO PROCEED PSEUDONYMOUSLY AND FOR A PROTECTIVE ORDER**

Plaintiffs, the American Academy of HIV Medicine ("the Academy"); the HIV Medicine Association ("HIVMA"), a division of the Infectious Diseases Society of America; the International Association of Providers of AIDS Care ("IAPAC"); Jennifer K. Brody, MD; and Christopher Fox, NP, respectfully submit this memorandum of law in support of their motion for entry of an order allowing Nurse Practitioner Danielle Doe and Dr. Rachel Roe ("Pseudonymous Member Declarants"), who are members of the Associational Plaintiffs, to proceed pseudonymously and for a protective order permitting them to file declarations in support of Plaintiffs' Motion for Preliminary Relief under 5 U.S.C. § 705 and for a Preliminary Injunction under pseudonyms.

## INTRODUCTION

Plaintiffs are healthcare providers and associations whose members are healthcare providers who participate in the Ryan White Program and care for people living with HIV, including transgender persons living with HIV, who rely on the Ryan White Program for access

to their medical care. These patients obtain HIV care as well as their primary care, including gender-affirming medical care, through the Ryan White Program.

Plaintiffs are challenging the adoption and imposition of discriminatory conditions ("the Challenged Conditions") on the Ryan White Program that impact people living with HIV and their healthcare providers. The Challenged Conditions, which are being implemented through the FY2026 HRSA General Terms and Conditions and Notices of Funding Opportunity for the Ryan White Program, including those pertaining to the Ryan White Program's Part B Supplemental, Part C, and Part F, prohibit Ryan White funding recipients from acknowledging, affirming, or respecting the identities of transgender people, including transgender patients living with HIV, or from using federal funding in a way that promotes so-called "gender ideology," including through the provision of gender-affirming medical care.

The Pseudonymous Member Declarants—NP Doe and Dr. Roe—are two healthcare providers who are not parties in this case but are members of the Associational Plaintiffs who are impacted by the Challenged Conditions. They seek to provide testimony to support Plaintiffs' Motion for Preliminary Relief under 5 U.S.C. § 705 and for a Preliminary Injunction. However, they fear doing so publicly will place them, their families, their colleagues, their clinics, and their patients at a substantial risk of violence, harassment, and retaliation.

Because the fears and concerns of the Pseudonymous Member Declarants are well-founded, Plaintiffs request permission for the Pseudonymous Member Declarants to proceed under pseudonym.[1] These protections are warranted to protect the Pseudonymous Member Declarants and enable them to participate in this case to vindicate their rights and the rights of their transgender patients.

---

[1] To protect their privacy pending consideration of this motion, Plaintiffs use in their Complaint and this motion the pseudonyms for Pseudonymous Member Declarants that they seek permission to use.

## LEGAL STANDARD

District courts "enjoy[] broad discretion to quantify the need for anonymity in the case before it." *Doe v. Town of Lisbon*, 78 F.4th 38, 45 (1st Cir. 2023) (quoting *Doe v. Massachusetts Inst. of Tech.*, 46 F.4th 61, 72 (1st Cir. 2022) ("*MIT*")). The First Circuit has explained that "the appropriate test" in deciding when a pseudonym may be warranted in civil litigation "must center on the totality of the circumstances." *MIT*, 46 F.4th at 70. In doing so, it explained that it is "unnecessary to festoon the easily understood 'totality of the circumstances' standard with any multi-factor trappings," noting that "district courts enjoy broad discretion to identify the relevant circumstances in each case and to strike the appropriate balance between the public and private interests." *Id.*

While the First Circuit has not specifically weighed in on when anonymity is appropriate for non-parties, it has "sketch[ed] four general categories … in which party anonymity ordinarily will be warranted." *Id.* at 71. These "paradigms" provide guidance to district courts in "balanc[ing] the interests asserted by the movant in favor of privacy against the public interest in transparency, taking all relevant circumstances into account." *Id.* at 72. Courts in this district have granted pseudonymous status to both parties and nonparties under the *MIT* paradigms. *See, e.g.*, *New York v. McMahon*, No. 1:25-CV-10601-MJJ, 2025 WL 1478387 at *1 (D. Mass. Mar. 21, 2025).

At a minimum, pseudonym use is warranted when the person seeking anonymity falls into one or more of the following categories: (1) a "would-be Doe who reasonably fears that coming out of shadows will cause him unusually severe harm (either physical or psychological)"; (2) "identifying the would-be Doe would harm innocent non-parties"; (3) "anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated"; or (4) a suit is bound up with a "prior proceeding made confidential by law." *MIT*, 46 F.4th at 71-72 (quotations omitted).

Still, "[c]ivil actions come in a wide variety of shapes and sizes, and we are not so sanguine as to believe that these four paradigms capture the entire universe of cases in which pseudonymity may be appropriate." *Id.* at 72. Other courts have looked to other factors such as "whether the justification asserted by the requesting party . . . is to preserve privacy in a matter of sensitive and highly personal nature; . . . whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993); *see also Foster v. Andersen*, No. 18-cv-02552-DDC-KGG, 2019 WL 329548 (D. Kan. Jan. 25, 2019).

## ARGUMENT

Permitting the Pseudonymous Member Declarants to proceed under pseudonym is warranted in this case under *MIT*'s paradigms and the Court's discretion. The Pseudonymous Member Declarants reasonably fear physical and psychological harm, as well as retribution from government actors, should their identities become public based on their provision of medical care to transgender patients and the filing of this lawsuit.

### I. NP Doe and Dr. Roe Are Members of Associational Plaintiffs, and Associational Plaintiffs Do Not Need to Identify Members by Name.

At the outset, it is important to note that neither NP Doe nor Dr. Roe are parties to this litigation. They are participating in this case as members of Associational Plaintiffs, namely, the Academy and HIVMA. *See* Doe Decl. ¶ 3; Roe Decl. ¶ 3.[2] Of course, while "an organization must demonstrate that . . . its members would otherwise have standing to sue in their own right," organizations can bring claims on their members' behalf when "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair*

[2] References to "Doe Decl." and "Roe Decl." are to the declarations of NP Danielle Doe and Dr. Rachel Roe being filed in support of Plaintiffs' Motion for Preliminary Injunction.

*Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (citation modified). Importantly, "when it is clear and not speculative that a member of a group will be adversely affected by a challenged action and a defendant does not need to know the identity of a particular member to defend against an organization's claims, the organization does not have to identify particular injured members by name." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 708 (9th Cir. 2025); *see also Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 773 (11th Cir. 2024) ("[W]e [have] specifically declined to require an organizational plaintiff to identify by name the members on whose behalf it was suing. . . . And more generally, we have routinely permitted organizations to sue on behalf of pseudonymously identified members." (citations omitted)); *cf. Virginia Coal. for Immigrant Rts. v. Beals*, 803 F. Supp. 3d 454, 468 (E.D. Va. 2025).

This makes sense given that the First Amendment protects associations like the Academy and HIVMA from having to disclose the identities of their members. *See First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1123-24 (2026) (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958)). As the Supreme Court has noted, "associational rights carry special significance for political, social, religious, and other minorities." *First Choice*, 146 S. Ct. at 1122. This is a case in which the Pseudonymous Member Declarants provide care for a vulnerable minority population—transgender people living with HIV. At this time, the medical care they provide is politically fraught given the Trump's Administration's rhetoric and attacks. *See Endocrine Soc'y v. Fed. Trade Comm'n*, No. CV 26-512 (JEB), 2026 WL 1257289, at *1 (D.D.C. May 7, 2026) ("Members of the Executive Branch, including the President, have expressed vehement disagreement with, criticism of, and vitriol toward th[e] message" that "individuals can experience gender incongruence between their biological sex and their gender identity and that gender-affirming care can treat that incongruence."); *In re 2025 UPMC Subpoena*,

No. 2:25-MC-01069-CB, 2026 WL 570419, at *2 (W.D. Pa. Mar. 2, 2026) (noting that the administration's "rhetoric regarding gender-affirming care reflects callous indifference, if not abject cruelty"); *see also Arroyo González v. Rosselló Nevares*, 305 F.Supp.3d 327, 333 (D.P.R. 2018) (disclosing a person's transgender status, particularly now, "exposes transgender individuals to a substantial risk of stigma, discrimination, intimidation, violence, and danger").

In any event, because NP Doe and Dr. Roe are not parties, their request falls arguably under *MIT*'s paradigm regarding cases "in which identifying the would-be Doe would harm innocent non-parties." *MIT*, 46 F.4th at 71 (citation modified). As the First Circuit observed, a "nonparty 'has a stronger case for anonymity' than [a] party." *Id.* (quoting *Doe v. Trs. of Dartmouth Coll.*, No. 18-CV-040-LM, 2018 WL 2048385, at *6 (D.N.H. May 2, 2018)); *see also Smith v. Bentley Univ.*, No. 25-CV-12317-AK, 2026 WL 194339, at *2 (D. Mass. Jan. 26, 2026) ("Nonparties often have a strong claim to privacy, and courts should weigh the likelihood and severity of harm to identifiable nonparties when considering pseudonymity.") (citing *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 78–79 (1st Cir. 2018)).

Indeed, for these reasons, courts in this district have permitted members of associational plaintiffs to participate under pseudonym. *See*, *e.g.*, Protective Order, *Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, No. 25-cv-10787-WGY (D. Mass. May 5, 2025) (ECF No. 63) (granting pseudonymity "non-plaintiff organizational members" who "have privacy concerns and fears of retaliation" who by "organizational nature of Plaintiffs" would be "involved in the litigation . . . [by] providing declarations in support of Plaintiffs' Motion for Preliminary Injunction").

## II. The Pseudonymous Member Declarants' Justifications Go Beyond Avoiding Annoyance and Are Necessary to Preserve Their Privacy and Sensitive Personal Information.

The fact that the Pseudonymous Member Declarants are members of Associational Plaintiffs should end the inquiry. However, should the Court require additional support for Plaintiffs' motion, additional considerations counsel in favor of Plaintiffs' request. In evaluating a request for anonymity, courts have considered whether a movant "has identified 'a specific sensitive and personal privacy interest.'" *Doe v. Pittsylvania Cnty.*, 844 F.Supp.2d 724, 729 (W.D. Va. 2012).

Here, the Pseudonymous Member Declarants' desire to proceed pseudonymously reflects the sensitive nature of their work, as well as the close relationship they have with their patients. While their identities themselves are not ordinarily highly sensitive information, the nature of their work and the subject matter of this case makes them so. Their work is intertwined with matters touching upon transgender patients' identities and care pertaining to the health and wellbeing of transgender people living with HIV. These are matters that courts, for decades, have found to be sufficiently "highly sensitive" to warrant protection. *See* Protective Order, *Am. Ass'n of Physicians for Hum. Rts., Inc. v. Nat'l Institutes of Health*, No. 25-cv-01620-LKG (D. Md. June 30, 2025) (ECF No. 81) (granting pseudonymity to LGBTQI+ healthcare researchers and providers, including members of associational plaintiffs "who wish to submit a declaration in this case and have concerns about their privacy, safety, and retaliation in connection with their participation in this litigation"); *PFLAG, Inc. v. Trump*, 766 F. Supp. 3d 535, 549 n.14 (D. Md. 2025) (granting motion to proceed under pseudonym when movants asserted that it was necessary to protect them "from undue harassment, discrimination, and violence because of the Minor and Adult Plaintiffs' transgender status"); *Doe v. Cath. Relief Servs.*, No. 1:20-CV-01815-JRR, 2024 WL 4335643, at *3 (D. Md. Sept. 26, 2024) ("Individuals in the LGBTQ+ community face hate, ridicule, violence

and all manner of loathsome, discriminatory, and, at times, criminal treatment.");[3] *Hersom v. Crouch*, No. 2:21-CV-00450, 2022 WL 908503, at *1 (S.D.W. Va. Mar. 28, 2022) (granting motion to proceed under pseudonym when "revealing [movant's] transgender status will subject him to substantial risk of mental and physical harm"); *Doe v. Genesis HealthCare*, 535 F. Supp. 3d 335, 339 (E.D. Pa. 2021) (stating that courts "have allowed anonymity due to the private and intimate nature of being transgender"); *Foster*, 2019 WL 329548, at *2 ("[T]he disclosure of [plaintiff]'s identity would reveal matters of a highly sensitive and personal nature, specifically [plaintiff]'s transgender status and his diagnosed medical condition—gender dysphoria."); *Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F. Supp. 72, 73 (D.R.I. 1992) ("Particularly in this era of seemingly increased societal intolerance toward 'unconventional' sexual behavior, I will not strip plaintiff of the cloak of privacy which shields him from the stigmatization he might otherwise endure."); *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 712–13 (5th Cir. 1979) ("Where the issues involved are matters of a sensitive and highly personal nature, such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families, the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a very private matter." (citation modified)).

In sum, legitimate privacy concerns motivate Pseudonymous Member Declarants' request for anonymity, not mere annoyance.

---

[3] The court in *Doe v. Catholic Relief Services* granted the plaintiff's motion to proceed pseudonymously. *See* Order, *Doe v. Cath. Relief Servs.*, No. 1:20-CV-01815-JRR (D. Md. Aug. 20, 2020) (ECF No. 12).

### III. The Risk of Severe and Substantial Physical and Psychological Harm Justifies the Use of Pseudonyms.

NP Doe and Dr. Roe should be permitted to participate in this case under pseudonyms because doing so publicly would place them at risk of severe and substantial physical and psychological harm.

Under the first paradigm identified by the *MIT* court, parties who reasonably fear severe harm may be granted anonymity. 46 F.4th at 71. This paradigm is satisfied where disclosure would expose a party to particular risks, including physical danger or psychological injury, distinct from ordinary litigation stress. *Id.*

Courts have regularly granted anonymity where "exceptional circumstances" threaten would-be Does, including in cases involving providers of gender-affirming medical care. *See id; In re Subpoena Duces Tecum No. 25-1431-016*, No. 2:25-MC-00041-JHC, 2025 WL 3562151, at *15 (W.D. Wash. Sept. 3, 2025) (allowing for an order to seal in part due to gender-affirming medical care providers' safety concerns); *QueerDoc, PLLC v. U.S. Dep't of Just.*, 807 F.Supp.3d 1295, 1301 (W.D. Wash. 2025) (permitting the redaction of specific gender-affirming medical care provider identifying information).

As providers of gender-affirming medical care, Pseudonymous Member Declarants reasonably fear harm to themselves, their families, and their patients. Doe Decl. ¶¶ 4, 14, 17; Roe Decl. ¶¶ 4, 12, 15. The Pseudonymous Member Declarants' fears are well-founded. Physical violence against providers of gender-affirming medical care and their clinics has sharply risen as anti-transgender legislation and social media campaigns increase their visibility. *See* Abbie E. Goldberg & Elana Redfield, The Williams Institute, *The Experiences of Gender-affirming Care Providers in States Without Laws Restricting Access to Care* (April 2025) (attached as **Exhibit A** to Ferguson Decl.) (reporting that because they provide gender-affirming medical care, 26% of

providers had been personally threatened online, 13% had been threatened in person, and 16% threatened by phone, while 29% of clinics received threats related to the provision of gender-affirming medical care); Landon D. Hughes, et al., *Adolescent Providers' Experiences of Harassment Related to Delivering Gender-Affirming Care*, 73 J. Adolescent Health 672, 674 (2023) (attached as **Exhibit B** of Ferguson Decl.) (finding that 70% of providers of youth gender-affirming care or their clinics experienced targeted harassment). In response, in 2022 the American Academy of Pediatrics, the American Medical Association, and the Children's Hospital Association requested the Attorney General and the Department of Justice to investigate the rising threats of violence against physicians and their practices. *See* Letter from the American Academy of Pediatrics, American Medical Association & Children's Hospital Association to Merrick Garland, U.S. Att'y Gen. (Oct. 3, 2022) (attached as **Exhibit C** to Ferguson Decl.).

Threats of violence hit close to home for Pseudonymous Member Declarants. For example, while Massachusetts, where NP practices, "generally supports access to HIV care and gender-affirming medical care, people in Massachusetts are not immune from the current national climate surrounding these issues, which is highly contentious." Doe Decl. ¶ 15. NP Doe is "aware of people making death threats against healthcare providers who provide gender-affirming medical care in Massachusetts." *Id*. Indeed, in 2022, Boston Children's Hospital experienced weeks of online, email, and phone harassment over their provision of gender-affirming care. *See* Hum. Rts. Campaign Found., *Online Harassment, Offline Violence: Unchecked Harassment of Gender-affirming Care Providers and Children's Hospitals on Social Media, and its Offline Violent Consequences* 13-15 (2022) (attached as **Exhibit D** to Ferguson Decl.). Social media accounts called for doctors to be "put in camps" or subjected to "Nuremberg type trials and punishments," referred to providers as pedophiles, and issued threats that a "day of reckoning is coming" for

doctors. *Id.* at 2. The harassment culminated with the hospital experiencing three different bomb threats, forcing lockdowns and evacuations. *Id.* at 1. Bomb threats were also made to provider's homes. *Id.*

Similarly, Dr. Roe "practice[s] in Tennessee, where there is significant hostility toward transgender people as well as providers who offer affirming care to transgender individuals." Roe Decl. ¶ 13. As Dr. Roe notes, "there has been a significant rise in harassment against those who care for and support transgender people, including in Tennessee," such that she is "aware of targeted online harassment, doxxing, and even bomb threats targeting gender-affirming care providers." *Id.* In Tennessee, health providers reported in 2022 receiving death threats after a far-right ideologue tweeted about a clinic providing gender-affirming care. *Id.* at 6. Posts called for the death and imprisonment of physicians, including calling for doctors having "their families slaughtered while they're forced to watch." Ex. D – Hum. Rts. Campaign Found., *supra*, at 9. Other hospitals and medical facilities providing gender-affirming medical care in Dr. Roe's region, such as St. Louis Children's Hospital and Wake Forest University School of Medicine, have also received threatening messages. *Id.* at 7-8.

In addition to threats of violence, targeted harassment causes physiological harm to providers. *See* Ex. B – Hughes et al., *supra*, at 676. In a study on gender-affirming medical providers for youth, respondents shared that threats of violence caused mental and emotional distress. *Id.* Providers reported feeling of fear of safety, stress, disrupted sleep, and panic attacks. *Id.* Many said that they started psychiatric care and therapy because of harassment. *Id.*; *see also* Ex. A – Williams Inst. (reporting that 80% of gender-affirming medical care providers have heightened levels of stress related to the rise in legislation around gender-affirming care, 77% of

providers experienced increased anxiety, 53% had elevated depression, and 36% had more difficulty sleeping).

Put simply, the Pseudonymous Member Declarants have a reasonable and serious fear that goes beyond mere reputational harm or embarrassment. Threats of harassment and violence because of lawsuit participation would subject them to potential physical and certain psychological harm, as well as disrupt their clinical practice and their patients' ability to receive care. As such, the use of pseudonyms is not only justified but falls squarely within *MIT*'s first paradigm.

## IV. Risk of Government Retribution and Chilled Speech Warrants the Use of Pseudonyms.

Plaintiffs also seek pseudonymity for the Pseudonymous Member Declarants because these members fear retribution or stigmatization by becoming the subject of a Department of Justice investigation. They are "concerned that public identification could expose [them] to retaliation that would disrupt [their] ability to provide care, including potential scrutiny from federal and state officials, loss of institutional support, or interference with [their] clinical practice." Roe Decl. ¶ 16; *see also* Doe Decl. ¶ 18.

It is no secret that the Trump administration has been targeting providers of gender-affirming medical care. *See*, *e.g.*, Exec. Order No. 14187, *Protecting Children From Chemical and Surgical Mutilation*, 90 FR 8773 (2025) (directing the Department of Justice to "prioritize investigations and take appropriate action" against providers of gender-affirming medical care for youth); Press Release, Off. of Pub. Affs., U.S. Dept. of Just., *Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children* (July 9, 2025), https://tinyurl.com/3ecxh94d [https://perma.cc/H66N-9QY8] (announcing the sending of more than twenty subpoenas to doctors and clinics providing gender-affirming medical care to children, and stating that "[m]edical professionals and organizations that mutilated children in the

service of a warped ideology will be held accountable by this Department of Justice”). Pseudonymous Member Declarants are aware of this. Doe Decl. ¶ 18; Roe Decl. ¶ 16.

These actions seek to “fulfill the Executive’s well-publicized policy objective to terminate and block gender affirming healthcare.” *In Re 2025 Subpoena to Children’s Nat’l Hosp.*, No. 1:25-CV-03780-JRR, 2026 WL 160792 at *8 (D. Md. Jan. 21, 2026); *see also In re Dep’t of Just. Admin. Subpoena No. 25-1431-030*, No. 25-MC-00063-SKC-CYC, 2026 WL 33398, at *7 (D. Colo. Jan. 5, 2026) (“[The] government’s . . . true objective [is] pressuring pediatric hospitals into ending gender-affirming care through commencing vague, suspicionless ‘investigations.’”); *In re Admin. Subpoena No. 25-1431-019*, 800 F.Supp.3d 229, 237, 239 (D. Mass. 2025) (stating that the subpoena’s “true purpose” is to interfere with “Massachusetts’s right to protect GAC within its borders, to harass and intimidate [hospitals] to stop providing such care, and to dissuade patients from seeking such care”), *appeal docketed*, No. 25-2092 (1st Cir. Nov. 14, 2025).

The administration has also frequently targeted perceived enemies, including those who litigated against them. *See, e.g.*, Ryan Lucas, *Experts Say Trump’s Targeting of Law Firms is Unprecedented*, NPR (Mar. 19, 2025), https://tinyurl.com/5n8y3s32 [https://perma.cc/7LP6-ZNML] (detailing how the Trump administration has repeatedly threatened or prosecuted law firms that represented people or causes unpopular with President Trump). Pseudonymous Member Declarants are aware of this and fear such retribution. Doe Decl. ¶ 18; Roe Decl. ¶ 16.

Moreover, if the Pseudonymous Member Declarants were forced to identify themselves, it would risk a chilling effect, which by itself warrants anonymity, per *MIT*’s third paradigm. *See MIT*, 46 F.4th at 71 (involving cases where anonymity would “forestall a chilling effect on future litigants who may be similarly situated”). Other providers are already frightened to speak about gender-affirming medical care due to the same fears the Pseudonymous Member Declarants share

here. *See* Doe Decl. ¶ 56 ("[P]roviders may be hesitant to speak openly about gender-affirming medical care due to possible political or legal implications."); *id.* at ¶ 57 (noting that "at a conference panel focused on HIV care and related to the Ryan White Program, panelists refused to answer a question about drug interactions with gender-affirming hormone therapy due to fear of backlash"). If the Pseudonymous Member Declarants are denied pseudonymity, providers and the associations they are members of may be discouraged from bringing legal challenges on behalf of themselves, their practices, and their clients when doing so could force them to step into the spotlight and risk both government retribution and their own safety.

### V. Pseudonymity is Appropriate Because Defendants are Government Agencies and Officials and Pseudonymity Does Not Undermine the Public's Interest in Open Judicial Proceedings.

Furthermore, the fact that Defendants are government agencies and officials "favors anonymity where a plaintiff is suing a government entity." *Hersom*, 2022 WL 908503, at *2. Here, the only defendants are two federal government agencies—HRSA and HHS—and two government officials sued in their official, not individual, capacities.

Courts are much more likely to permit pseudonymous suits against the government because "there is both 'arguably a public interest in a vindication of . . . rights' and a risk of stigmatization of the plaintiff, who often represents a minority interest." *Int'l Refugee Assistance Project v. Trump*, No. CV TDC-17-0361, 2017 WL 818255 at *3 (D. Md. Mar. 1, 2017) (citing *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. Feb. 19, 2003)). "[T]he public's interest in open proceedings must inform a district court's pseudonymity calculus." *Doe v. Pub. Citizen*, 749 F.3d 246, 274 (4th Cir. 2014); *see also MIT*, 46 F.4th at 72 ("A district court adjudicating a motion to proceed under a pseudonym should balance the interests asserted by the movant in favor of privacy against the public interest in transparency, taking all relevant circumstances into account.").

But of course, here all Plaintiffs are proceeding under their own names. This request to proceed under pseudonym solely concerns non-party declarants who are members of Associational Plaintiffs. Allowing these Pseudonymous Member Declarants to proceed under pseudonyms does not deny the public its right to attend the proceedings or inspect the court's opinions and orders resolving the underlying constitutional issue, or even to know the identity of the parties themselves. *See Doe v. Alger*, 317 F.R.D. 37, 39 (W.D. Va. 2026); *see also Cath. Relief Servs.*, 2024 WL 4335643, at *4 ("Allowing a party to proceed by pseudonym does not deprive the public from knowledge of the case or many of its facts; instead, it deprives the public only of identifying information of a party."). As many courts have held, public interest pertains to the outcome of the litigation, not the individual participants. *See*, *e.g.*, *Doe ex rel. Doe v. Harris*, No. CIV.A. 14-0802, 2014 WL 4207599, at *2 (W.D. La. Aug. 25, 2014) ("[M]any of the cases allowing plaintiffs to proceed anonymously involve challenges to the constitutional, statutory, or regulatory validity of governmental activity."), *aff'd,* No. CIV.A. 14-0802, 2015 WL 5664255 (W.D. La. Sept. 24, 2015).

## VI. There Is No Risk of Unfairness to Defendants.

Finally, there is no risk of prejudice or unfairness to Defendants if the Court grants Plaintiffs' request for a protective order allowing the Pseudonymous Member Declarants to proceed under pseudonyms. First, the government does "not need to know the identity of a particular member to respond to" Associational Plaintiffs' claims regarding the Challenged Conditions; this case is a paradigmatic example of associational standing. *League of United Latin Am. Citizens v. Exec. Office of President*, 808 F. Supp. 3d 29, 59 (D.D.C. 2025) (internal quotation marks omitted) (citation omitted) (holding plaintiffs' declarations from several named organizational leaders and pseudonymous declarations were sufficient to demonstrate associational standing); *see also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). However, should Defendants somehow demonstrate to the Court that such information is

necessary, NP Doe and Dr. Roe have averred that, should the Court require it, they are willing to disclose their identities under a sufficiently protective order. Doe Decl. ¶ 20; Roe Decl. ¶ 18. In such circumstances, Defendants suffer no unfairness or prejudice. *See*, *e.g.*, *Doe v. Univ. of Maryland Med. Sys. Corp.*, No. SAG-23-1572, 2023 WL 3949737, at *3 (D. Md. June 12, 2023) ("[T]here is no risk of prejudice to Defendants by allowing this action to proceed anonymously, given that Defendants are aware of Plaintiff's identity."); *Doe v. Virginia Polytechnic Inst. & State Univ.*, No. 7:19-CV-00249, 2020 WL 1287960, at *5 (W.D. Va. Mar. 18, 2020) ("[T]here is no risk [of unfairness to defendants] because the defendants are aware of Doe's and Roe's identities.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Leave to Permit Associational Plaintiffs' Members to Proceed Pseudonymously and for a Protective Order.

Dated this 10th day of June 2026.

Respectfully submitted,

/s/ Omar Gonzalez-Pagan

José I. Abrigo*
Omar Gonzalez-Pagan (BBO No. 678517)
Jessica Polansky*
Charlie Ferguson*
**Lambda Legal Defense**
**and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, New York 10005
Telephone: 212-809-8585
Facsimile: 855-535-2236
jabrigo@lambdalegal.org
ogonzalez-pagan@ lambdalegal.org
jpolansky@lambdalegal.org
cferguson@lambdalegal.org

Jeffrey S. Trachtman*
Jason M. Moff*
Hannah Kanter*
Stephen P. Ferguson*
**HERBERT SMITH FREEHILLS**
**KRAMER (US) LLP**
1177 Avenue of the Americas
New York, NY 10036
Telephone: 212-715-9100
Facsimile: 212-715-8000
jeffrey.trachtman@hsfkramer.com
jason.moff@hsfkramer.com
hannah.kanter@hsfkramer.com
stephen.ferguson@hsfkramer.com

Ryan P. Trumbauer*
**HERBERT SMITH FREEHILLS KRAMER (US) LLP**
2000 K Street NW, 4th Floor
Washington, DC 20006
Telephone: 202-775-4500
Facsimile: 202-775-4510
ryan.trumbauer@hsfkramer.com

* Motion for admission *pro hac vice* pending.

Kenneth D. Upton, Jr.*
**Lambda Legal Defense and Education Fund, Inc.**
3656 North Halsted Street
Chicago, Illinois 60613
Telephone: 312-663-4413
Facsimile: 855-535-2236
kupton@lambdalegal.org

Pelecanos*
**Lambda Legal Defense and Education Fund, Inc.**
800 South Figueroa St., Suite 1260†
Los Angeles, California 90017
Telephone: 213-382-7600
Facsimile: 855-535-2236
pelecanos@lambdalegal.org

† Mailing address only

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that, on June 10, 2026, counsel for Plaintiffs provided a copy of the forgoing document to the following attorneys at the U.S. Department of Justice by electronic mail:

Abraham George
Chief, Civil Division
U.S. Attorney's Office for the District of Massachusetts
abraham.george@usdoj.gov

Rayford Farquhar
Chief, Defensive Litigation, Civil Division
U.S. Attorney's Office for the District of Massachusetts
rayford.farquhar@usdoj.gov

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan (BBO No. 678517)
**Lambda Legal Defense**
**and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, New York 10005
Telephone: 212-809-8585
Facsimile: 855-535-2236
ogonzalez-pagan@lambdalegal.org