**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| AMERICAN ACADEMY OF HIV MEDICINE, *et al.*,<br><br>       *Plaintiffs*,<br><br>       v.<br><br>HEALTH RESOURCES AND SERVICES ADMINISTRATION, *et al.*,<br><br>       *Defendants*. | Case No. 1:26-cv-12638-WGY |

**<u>REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY RELIEF UNDER 5 U.S.C. § 705 AND PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.    This Court Has Jurisdiction Over Plaintiffs' Claims. ................................................... 2

        A.    The Tucker Act Does Not Deprive the Court of Jurisdiction. ....................................... 2

            i.    The Court Has Jurisdiction Over Plaintiffs' APA Claims. ........................................ 2

            ii.    The Court Has Jurisdiction Over the Constitutional and ACA Claims. ...................... 5

        B.    Plaintiffs Have Standing, and Their Claims Are Ripe. .................................................. 6

        C.    Defendants Have No Discretion to Impose the Challenged Conditions. ........................ 8

        D.    The Challenged Conditions Are Reviewable as Final Agency Action. ......................... 10

    II.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims. ................................... 11

        A.    The Challenged Conditions Are Arbitrary and Capricious. ........................................... 11

        B.    The Challenged Conditions Are Contrary to Law. ........................................................ 13

        C.    Defendants Lack Authority to Impose The Challenged Conditions. ............................. 13

        D.    The Challenged Conditions Unlawfully Discriminate. .................................................. 15

        E.    The Challenged Conditions Violate the First Amendment. .......................................... 17

    III.    Plaintiffs and Their Patients Will Experience Irreparable Harm. ................................. 18

    IV.    Plaintiffs Are Entitled to the Requested Scope of Relief. ............................................. 18

    V.    A Stay of Preliminary Relief and a Bond Are Inappropriate. ....................................... 20

CONCLUSION ........................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Afr. Communities Together v. Noem*,
   820 F.Supp.3d 48 (D. Mass. 2026) ........................................................................ 19

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
   570 U.S. 205 (2013) .............................................................................................. 18

*Am. Ass'n of Physicians for Hum. Rts., Inc. v. Nat'l Inst. of Health*,
   795 F.Supp.3d 678 (D. Md. 2025) .......................................................................... 8

*Am. Ass'n of Physics Tchrs., Inc. v. Nat'l Sci. Found.*,
   804 F.Supp.3d 45 (D.D.C. 2025) ........................................................................... 5

*Am. Hosp. Ass'n v. Kennedy*,
   164 F.4th 28 (1st Cir. 2026) ................................................................................... 13

*Am. Pub. Health Ass'n v. Nat'l Institutes of Health*,
   145 F.4th 39 (1st Cir. 2025) ................................................................................... 6

*Ass'n of Am. Universities v. Dep't of Def.*,
   792 F.Supp.3d 143 (D. Mass. 2025) ...................................................................... 20

*Ass'n of Am. Universities v. Dep't of Def.*,
   806 F.Supp.3d 79 (D. Mass. 2025) ........................................................................ 19

*Bell Atlantic Tel. Co. v. FCC*,
   79 F.3d 1195 (D.C. Cir. 1996) ............................................................................... 12

*Bennett v. Spear*,
   520 U.S. 154 (1997) .............................................................................................. 10

*Biden v. Missouri*,
   595 U.S. 87 (2022) ................................................................................................ 9

*California v. U.S. Dep't of Transp.*,
   808 F.Supp.3d 291 (D.R.I. 2025) ....................................................................... 6, 7

*Career Colleges & Schs. of Texas v. U.S. Dep't of Educ.*,
   98 F.4th 220 (5th Cir. 2024), *cert. granted in part sub nom. Dep't of Educ. v.*
   *Career Colleges & Schs. of Texas*, 145 S. Ct. 1039 (2025), and *cert. dismissed sub nom.*
   *Dep't of Ed. v. Career Colleges & Sch. of TX*, 146 S. Ct. 59 (2025) ....................... 19

*Centro de Trabajadores Unidos v. Bessent*,
   167 F.4th 1218 (D.C. Cir. 2026) ............................................................................ 19

*Chiles v. Salazar*,
  146 S. Ct. 1010 (2026) ................................................................................................ 17

*City of Arlington v. F.C.C.*,
  569 U.S. 290 (2013) ..................................................................................................... 14

*City of Providence v. Barr*,
  954 F.3d 23 (1st Cir. 2020) ........................................................................................... 9

*Commonwealth v. Trump*,
  No. 25-cv-12162, 2026 WL 1584837 (D. Mass. June 3, 2026) ..................................... 9

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
  596 U.S. 212 (2022) ....................................................................................................... 5

*Dellinger v. Bessent, et al.*,
  No. 25-cv-00385 (D.D.C. Feb. 10, 2025) (Minute Order) ............................................ 1

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) ............................................................................................. 8, 9, 12

*Dep't of Educ. v. California*,
  604 U.S. 650 (2025) ................................................................................................... 2, 4

*Diamond Alternative Energy, LLC v. Env't Prot. Agency*,
  606 U.S. 100 (2025) ....................................................................................................... 6

*Dugan v. Rank*,
  372 U.S. 609 (1963) ....................................................................................................... 5

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ................................................................................................. 12, 13

*FCC v. League of Women Voters of Cal.*,
  468 U.S. 364 (1984) ..................................................................................................... 17

*Food & Drug Admin. v. R. J. Reynolds Vapor Co.*,
  606 U.S. 226 (2025) ....................................................................................................... 6

*Freedom Network USA v. Trump*,
  No. 25-CV-12419, 2026 WL 800392 (N.D. Ill. Mar. 23, 2026),
  *order corrected and superseded sub nom. Freedom Network USA v. Trump*,
  No. 25 C 12419, 2026 WL 1899186 (N.D. Ill. Mar. 23, 2026) .............................. 7, 10

*FTC v. Dean Foods Co.*,
  384 U.S. 597 (1966) ....................................................................................................... 1

*Grafton & Upton Railroad Co. v. Town of Hopedale*,
 No. 22-cv-40080, 2023 WL 2761205 (D. Mass. Mar. 31, 2023) ................................................ 12

*Hisp. Affs. Project v. Acosta*,
 901 F.3d 378 (D.C. Cir. 2018) ....................................................................................................11

*Illinois v. Fed. Emergency Mgmt. Agency*,
 801 F.Supp.3d 75 (D.R.I. 2025) ......................................................................................... 6, 7, 9

*Illinois v. Noem*,
 813 F.Supp.3d 282 (D.R.I. 2025) ........................................................................................ 3, 10

*Joshua v. United States*,
 17 F.3d 378 (Fed. Cir. 1994) ...................................................................................................... 5

*Kadel v. N.C. State Health Plan for Tchrs. & State Emps.*,
 12 F.4th 422 (4th Cir. 2021), *as amended* (Dec. 2, 2021) .......................................................... 5

*Larson v. Domestic & Foreign Com. Corp.*,
 337 U.S. 682 (1949) .................................................................................................................... 5

*Legal Servs. Corp. v. Velazquez*,
 531 U.S. 533 (2001) .................................................................................................................. 17

*Lincoln v. Vigil*,
 508 U.S. 182 (1993) ............................................................................................................ 10, 14

*Loper Bright Enters. v. Raimondo*,
 603 U.S. 369 (2024) .................................................................................................................. 14

*Maine v. U.S. Dep't of Agric.*,
 778 F.Supp.3d 200 (D. Me. 2025) ............................................................................................ 20

*Massachusetts v. Dep't of Agric.*,
 No. 26-cv-11396 (D. Mass. June 24, 2026) (Memorandum of Decision) ................................. 9

*Massachusetts v. Kennedy*,
 783 F.Supp.3d 487 (D. Mass. 2025) ..........................................................................................11

*Massachusetts v. Nat'l Institutes of Health*,
 164 F.4th 1 (1st Cir. 2026) ......................................................................................................... 3

*Massachusetts v. Nat'l Institutes of Health*,
 770 F.Supp.3d 277 (D. Mass. 2025), *judgment entered*, No. 1:25-CV-10338,
 2025 WL 1063760 (D. Mass. Apr. 4, 2025), and *aff'd*, 164 F.4th 1 (1st Cir. 2026) ................. 19

*Massachusetts v. U.S. Dep't of Health & Hum. Servs.*,
 682 F.3d 1 (1st Cir. 2012) ......................................................................................................... 16

*McGuire v. Reilly*,
  386 F.3d 45 (1st Cir. 2004) ................................................................................. 17

*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982) ............................................................................. 3, 4

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ............................................................................................... 12

*New Hampshire Indonesian Cmty. Support v. Trump*, 157 F.4th 29, 35 (1st Cir. 2025),
  *cert. denied sub nom. Trump, et al. v. Doe, et al.*, No. 25-899,
  2026 WL 1871309 (U.S. June 30, 2026) ................................................................ 20

*Nat'l All. to End Homelessness v. Turner*,
  No. 25-cv-00447, 2026 WL 883437 (D.R.I. Mar. 31, 2026) ...................................... 9

*Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*,
  779 F.Supp.3d 149 (D.N.H. 2025) ......................................................................... 14

*Nat'l Institutes of Health v. Am. Pub. Health Ass'n*,
  145 S. Ct. 2658 (2025) .......................................................................................... 3, 4

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003) ............................................................................................... 6

*Nat'l Parks Conservation Ass'n v. Dep't of the Interior*,
  No. 26-CV-10877, 2026 WL 1706963 (D. Mass. June 12, 2026) ............................. 20

*New York v. Admin. for Child. & Fams.*,
  No. 26-CV-00172, 2026 WL 673848 (S.D.N.Y. Mar. 10, 2026) ....................... 3, 4, 5

*New York v. Kennedy*,
  155 F.4th 67 (1st Cir. 2025) .................................................................................. 3

*New York v. Trump*,
  171 F.4th 1 (1st Cir. 2026) ............................................................................. 3, 9, 11

*Oregon Council for Humans. v. U.S. DOGE Serv.*,
  794 F.Supp.3d 840 (D. Or. 2025) .......................................................................... 20

*PFLAG, Inc. v. Trump*,
  769 F.Supp.3d 405 (D. Md. 2025) ......................................................................... 7, 20

*Rhode Island Coal. Against Domestic Violence v. Bondi*,
  794 F.Supp.3d 58 (D.R.I. 2025) ........................................................................... 2, 3, 9

*Rhode Island Coal. Against Domestic Violence v. Kennedy*,
  812 F.Supp.3d 180 (D.R.I. 2025), *appeal dismissed sub nom. Rhode Island Coal. Against*

*Domestic Violence v. United States Dep't of Hous. & Urb. Dev.*, No. 25-2229,
   2026 WL 926474 (1st Cir. Jan. 5, 2026) ................................................................ 3, 4, 5, 9

*Ridley v. Mass. Bay Transp. Auth.*,
   390 F.3d 65 (1st Cir. 2004) ................................................................................................ 17

*Rivera-Gomez v. de Castro*,
   843 F.2d 631 (1st Cir. 1988) .............................................................................................. 12

*Rust v. Sullivan*,
   500 U.S. 173 (1991) ............................................................................................................. 13

*San Francisco A.I.D.S. Found. v. Trump*,
   786 F.Supp.3d 1184 (N.D. Cal. 2025) ............................................................................ 5, 8

*Speech First, Inc. v. Whitten*,
   145 S. Ct. 701 (2025) ............................................................................................................. 8

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
   600 U.S. 181 (2023) ................................................................................................................ 8

*Sustainability Inst. v. Trump*,
   165 F.4th 817 (4th Cir. 2026) .............................................................................................. 2

*Talbott v. United States*,
   176 F.4th 720 (D.C. Cir. 2026) ......................................................................................... 17

*Thakur v. Trump*,
   176 F.4th 1187 (9th Cir. May 26, 2026) .......................................................................... 18

*Town of Weymouth. v. Mass. Dep't of Env't Prot.*,
   961 F.3d 34 (1st Cir.), *on reh'g*, 973 F.3d 143 (1st Cir. 2020) ................................. 19

*Trump v. Boyle*,
   145 S. Ct. 2653 (2025) ............................................................................................................ 4

*Trump v. Cook*,
   No. 25A312, 2026 WL 1855613 (U.S. June 29, 2026) .................................................... 5

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
   517 U.S. 544 (1996) ................................................................................................................ 8

*United States v. Cardona*,
   88 F.4th 69 (1st Cir. 2023) ................................................................................................. 13

*United States v. Texas*,
   144 S.Ct. 797 (2024) ............................................................................................................... 1

*Washington v. Trump,*
   766 F.Supp.3d 1138 (W.D. Wash. 2025) ............................................................ 8

*West Virginia v. B.P.J.,*
   No. 24-38, 2026 WL 1868739 (U.S. June 30, 2026) ........................................ 15, 16

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.,*
   586 U.S. 9 (2018) ............................................................................................... 8

**Statutes**

5 U.S.C. § 701(a)(2) ............................................................................................... 8, 10

5 U.S.C. § 704 ............................................................................................................. 10

5 U.S.C. § 705 ...................................................................................................... 19, 20

28 U.S.C. § 1491(b)(1) ............................................................................................... 4

28 U.S.C. § 1491(b)(4) ............................................................................................... 4

31 U.S.C. § 6301 ......................................................................................................... 4

31 U.S.C. § 6304 ......................................................................................................... 4

42 U.S.C. § 300ff-22(a) ............................................................................................. 9

42 U.S.C. § 300ff-22(b)(3) ........................................................................................ 9

42 U.S.C. § 300ff-121(a) ........................................................................................... 1

42 U.S.C. § 18114 ....................................................................................................... 9

42 U.S.C. § 18116(a) .................................................................................................. 5

**Rules**

Fed. R. App. P. 8(a)(1)(A) ......................................................................................... 20

Fed. R. Civ. P. 7(b)(1) ................................................................................................ 20

**Regulations**

Federal Acquisition Regulation, 48 C.F.R. § 2.101 ................................................. 4

**INTRODUCTION**

This case seeks to protect the integrity of the Ryan White Program and the health of transgender people living with HIV. As established by Congress, the Ryan White Program seeks to ensure access, retention, and adherence to HIV treatment by providing not only access to HIV treatment for those who cannot afford it but also access to comprehensive care that addresses a patient's whole health needs, which in turn further ensures retention and adherence to HIV care. Pls.' Br. 3-5, 15-17. What is more, Ryan White Program funding is targeted towards "populations disproportionately impacted by HIV/AIDS." 42 U.S.C. § 300ff-121(a). Transgender people are such a population. Pls.' Br. 2-3. The Challenged Conditions are contrary to these purposes.

The Court's intervention is urgently needed *now* to prevent irreparable harm to Plaintiffs, transgender people living with HIV, and the Ryan White Program. A preliminary stay is likewise needed to protect the Court's ability to provide the prospective equitable relief Plaintiffs seek and need. After repeatedly delaying, Defendants issued the Notices of Funding Opportunity ("NOFOs") in June, with applications due on July 8, 10, and 13.[1] Preliminary relief is warranted to prevent Plaintiffs from having to certify in applications that they will abide by discriminatory terms and to prevent harms that would accrue once any Notices of Award (NOAs) are issued or denied, which will occur between the application deadlines and the term start dates on August 1, September 1, and September 30. Preliminary relief is needed prior to the issuance of any NOAs.[2]

Throughout their brief, Defendants misrepresent the nature of the Challenged Conditions and fundamentally misapprehend this case. Per Defendants, the Challenged Conditions merely

---

[1] Dkts. 19-9, 19-10, 19-11; Exhs. J (Part D NOFO) and K-N (version history of NOFOs), Abrigo Reply Decl.

[2] At a minimum, the Court may enter an administrative stay order to preserve its jurisdiction. *See* Minute Order, *Dellinger v. Bessent, et al.*, No. 25-cv-00385 (D.D.C. Feb. 10, 2025) (collecting cases); *see also United States v. Texas*, 144 S.Ct. 797, 798 (2024) (Barrett, J., concurring) ("[A]n administrative stay buys the court time to deliberate."); *FTC v. Dean Foods Co.*, 384 U.S. 597, 608 (1966) (holding that a court has "express authority under the All Writs Act to issue such temporary injunctions as may be necessary to protect its own jurisdiction.").

prohibit the provision of gender-affirming medical care using Ryan White Program funding. But the Challenged Conditions do much more. They require Ryan White funding recipients to abide by the Administration's view that transgender people do not exist and to refuse to recognize transgender people's identities even in the provision of HIV treatment. Either way, the Challenged Conditions are contrary to Ryan White Program's statutory framework and purpose, as deemed by Congress. The Court must assess the Challenged Conditions for what they say, not what Defendants' lawyers wish they would say in their attempts to evade liability.

## ARGUMENT

### I.    This Court Has Jurisdiction Over Plaintiffs' Claims.

#### A.  The Tucker Act Does Not Deprive the Court of Jurisdiction.

Defendants challenge this Court's jurisdiction to entertain Plaintiffs' claims simply because the Challenged Conditions relate to grant funding and thus, according to Defendants, the Tucker Act deprives this Court of jurisdiction. Defendants are mistaken. First, this Court has jurisdiction over Plaintiffs' APA claims because "the Tucker Act does not cover challenges to grant funding conditions." *Rhode Island Coal. Against Domestic Violence v. Bondi*, 794 F.Supp.3d 58, 67 (D.R.I. 2025) ("*RICADV v. Bondi*"). Second, this Court has jurisdiction over Plaintiffs' constitutional and Affordable Care Act ("ACA") claims. These claims do not depend on the sovereign immunity waivers in the Tucker Act or APA, nor are they subject to the Tucker Act's exclusion of such claims.

#### i.   The Court Has Jurisdiction Over Plaintiffs' APA Claims.

Defendants rely on cases pertaining to grant terminations to argue that the Tucker Act deprives this Court of jurisdiction. Gov't Br. 12-13 (citing *Dep't of Educ. v. California*, 604 U.S. 650 (2025), and *Sustainability Inst. v. Trump*, 165 F.4th 817 (4th Cir. 2026)). But this case is not about grants terminations. Plaintiffs "do not challenge conditions, terms, or agency action related to grants that the [government] has previously awarded them; they object to the challenged

2

conditions only to the extent that they are or will be placed upon grants for which they seek to apply." *RICADV v. Bondi*, 794 F.Supp.3d at 67. Moreover, Defendants ignore the Supreme Court's and First Circuit's latest pronouncements in this area, such as *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) ("*APHA*"), *Massachusetts v. Nat'l Institutes of Health*, 164 F.4th 1 (1st Cir. 2026), and *New York v. Trump*, 171 F.4th 1 (1st Cir. 2026). Under these precedents, "an order prohibiting implementation of agency guidance does not create a problem based on the Tucker Act simply because the guidance 'discusses internal policies related to grants.'" *New York*, 171 F.4th at 30 (quoting *APHA*, 145 S. Ct. at 2661 (Barrett, J., concurring)). "[P]laintiffs in this case do not challenge any withholding of funds promised under grant agreements." *Massachusetts*, 164 F.4th at 12; *see also New York v. Kennedy*, 155 F.4th 67, 75 n.4 (1st Cir. 2025) ("Importantly, this case does not challenge the cancellation of grants."); *New York v. Admin. for Child. & Fams.*, No. 26-CV-00172, 2026 WL 673848, at *11 (S.D.N.Y. Mar. 10, 2026) ("*NY v. ACF*").

This case is like others where courts have exercised jurisdiction over plaintiffs' APA claims "because the Challenged Conditions the Government seeks to impose have not become ratified terms to any grant agreement/contract." *Rhode Island Coal. Against Domestic Violence v. Kennedy*, 812 F.Supp.3d 180, 189 (D.R.I. 2025) ("*RICADV v. Kennedy*"); *see also Illinois v. Noem*, 813 F.Supp.3d 282, 298 (D.R.I. 2025) ("the Tucker Act is clearly inapplicable" "because these are not challenges to the terms and conditions of an executed grant agreement, but rather to the imposition of an allegedly unlawful condition on prospective grant agreements"). Plaintiffs seek to set aside unlawful conditions Defendants have imposed as requirements "to be *eligible*" to receive Ryan White funding. *RICADV v. Bondi*, 794 F.Supp.3d at 67. "The Tucker Act thus poses no bar." *Id.*

Given this, the Court need not consider the test set forth in *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 964-71 (D.C. Cir. 1982). *See Massachusetts*, 164 F.4th at 10-12. Nonetheless, "in

3

examining the 'source of the rights' and the 'type of relief sought,' … Plaintiffs' APA claims do not arise out of contractual obligations." *NY v. ACF*, 2026 WL 673848, at *13 (quoting *Megapulse*, 672 F.2d at 968). For one, "the gravamen of Plaintiffs' allegations does not turn on contract terms, but the federal statutes … that Congress put in place," *id.*, and the Constitution. For another, "Plaintiffs also do not seek to reinstate any contractual grants, nor do they request money damages." *Id.* Rather, Plaintiffs seek declaratory and prospective injunctive relief, which this Court, and not the Court of Federal Claims ("CFC"), can provide. *See*, *e.g.*, *RICADV v. Kennedy*, 812 F.Supp.3d at 190; *NY v. ACF*, 2026 WL 673848, at *13.

Furthermore, the Tucker Act itself supports Plaintiffs. The statute provides: "Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). And it specifies that in such bid protest cases, "the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5." 28 U.S.C. § 1491(b)(4). That district courts have jurisdiction over such bid protests illustrates that the APA claims challenging grant conditions and seeking only declaratory and injunctive relief are properly before this Court.[3]

---

[3] Plaintiffs also note that grants are not contracts within the CFC's Tucker Act jurisdiction. Under the Federal Acquisition Regulation ("FAR"), a "contract" "do[es] not include grants and cooperative agreements covered by 31 U.S.C. § 6301, et seq." 48 C.F.R. § 2.101. And Title 31 defines "grant agreements" by their purpose, directing executive agencies to use them when "the principal purpose of the relationship is to transfer a thing of value to the State or local government or other recipient to carry out a public purpose" and where "substantial involvement is not expected between the executive agency and the State, local government, or other recipient when carrying out the activity contemplated in the agreement." 31 U.S.C. § 6304. Ryan White grant funding is expressly meant "to carry out a public purpose" as contemplated by 31 U.S.C. § 6304, removing it from the FAR's definition of "contract." As such, it is not subject to the CFC's Tucker Act jurisdiction, but rather this Court's jurisdiction. Plaintiffs acknowledge that *APHA* and *California* involved grants. But those were preliminary determinations made on the Supreme Court's

In sum, Plaintiffs "do not seek to reinstate any contractual grants, nor do they request money damages," but rather "seek to vacate the underlying agency policy." *NY v. ACF*, 2026 WL 673848, at \*13. In other words, they "seek prospective reform of agency behavior." *Am. Ass'n of Physics Tchrs., Inc. v. Nat'l Sci. Found.*, 804 F.Supp.3d 45, 66 (D.D.C. 2025). "The Court can thus exercise jurisdiction to evaluate the agency's policies and priorities under the APA." *Id.* at 67.

### ii. The Court Has Jurisdiction Over the Constitutional and ACA Claims.

As to the constitutional claims, "Plaintiffs do not need a waiver of sovereign immunity to bring claims against executive officers acting outside the bounds of the Constitution or their statutory authority." *Id.* at 67 (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949); *Dugan v. Rank*, 372 U.S. 609, 621-22 (1963)); *see also Trump v. Cook*, No. 25A312, 2026 WL 1855613, at \*11 n.2 (U.S. 2026) ("We have often held that plaintiffs may sue in equity without a congressionally-provided cause of action to prevent an injurious act by a public officer." (cleaned up)). Indeed, courts have routinely exercised jurisdiction over such First and Fifth Amendment claims in cases relating to new conditions on federal funding. *See*, *e.g.*, *RICADV v. Kennedy*, 812 F.Supp.3d at 197. Of course, by their nature, such claims are not contractual claims within the jurisdiction of the CFC. *See San Francisco A.I.D.S. Found. v. Trump*, 786 F.Supp.3d 1184, 1212 (N.D. Cal. 2025) ("*SFAF*"); *see also Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994).

As to Plaintiffs' ACA claim, Section 1557 incorporates the "rights and remedies" of other civil rights statutes, including Title IX, which includes the right to sue in district court, *see Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 218 (2022), and has its own waiver of sovereign immunity, *see* 42 U.S.C. § 18116(a); *cf. Kadel v. N.C. State Health Plan for Tchrs. & State Emps.*, 12 F.4th 422, 439 (4th Cir. 2021), *as amended* (Dec. 2, 2021).

---

emergency docket. They do not represent the Court's ultimate views on the merits. *See Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) ("[O]ur interim orders are not conclusive as to the merits[.]").

### B. Plaintiffs Have Standing, and Their Claims Are Ripe.

Defendants challenge Plaintiffs' standing primarily on the grounds that their claims "lack [] ripeness for judicial adjudication." Gov't Br. 2; *id.* at 15. Defendants' argument lacks merit. For one, Defendants ignore that the inquiry into whether a plaintiff is "adversely affected" by an agency action, and thus entitled to bring suit under the APA, "is not especially demanding." *Food & Drug Admin. v. R. J. Reynolds Vapor Co.*, 606 U.S. 226, 233-34 (2025) (citation modified). "A plaintiff may sue under the APA unless her 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Id.* at 233. And here, Provider Plaintiffs and Associational Plaintiffs' members are regulated by the Challenged Conditions. In the APA context, "if a plaintiff is an object of the action (or forgone action) at issue, then there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100, 112 (2025).

To the extent that ripeness is at issue here, Plaintiffs easily meet "its two prongs—fitness and hardship." *California v. U.S. Dep't of Transp.*, 808 F.Supp.3d 291, 306 (D.R.I. 2025); *see also Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, 145 F.4th 39, 50 (1st Cir. 2025) ("[T]he district court clearly had jurisdiction to grant prospective relief that will govern the rather complex ongoing relationships between the Department and grant recipients." (citation modified)).

"In the administrative law context, fitness for review requires that the action be 'final agency action' within the meaning of the APA." *Illinois v. Fed. Emergency Mgmt. Agency*, 801 F.Supp.3d 75, 88 (D.R.I. 2025) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003)). And here, the Challenged Conditions are final agency action, as they "clearly represent[] the consummation of [Defendants'] decision-making process regarding the terms and

6

conditions of those [Ryan White] grants, and this decision imposes concrete legal consequences on" Plaintiffs, "who must choose whether to accede to an allegedly unlawful condition or else forgo ... dollars of federal grant funding." *California*, 808 F.Supp.3d at 305; *see infra* Section I.D.

The Challenged Conditions constitute action "by which rights or obligations have been determined, or from which legal consequences will flow." *Illinois*, 801 F.Supp.3d at 88 (citation modified). They state that "[a]ll activities proposed in [an] application" in response to the NOFOs "must align with" the Gender Order, and "awards shall not be used to fund, promote, encourage, subsidize, or facilitate … denial by the recipient of the sex binary in humans, or the belief that sex is a chosen or mutable characteristic." Dkt. 19-9 at 4. They also require Plaintiffs to "[a]pply[] sex-based definitions grounded in biological reality," Dkt. 19-2 at 5, and "recognize that a person's sex as either male or female is unchangeable," Dkt. 19-3 at 3. *See Freedom Network USA v. Trump*, No. 25-CV-12419, 2026 WL 800392, at *8 (N.D. Ill. Mar. 23, 2026).

As to the hardship to the parties, courts ask 'whether the challenged action creates a direct and immediate dilemma for the parties.'" *Illinois*, 801 F.Supp.3d at 88 (citation omitted). Here, Plaintiffs must not only conform their applications to the Challenged Conditions but they must refrain from recognizing their transgender patients' identities and from providing them with medical treatment for gender dysphoria under any part of the Ryan White Program. *See* Pls.' Br. 5-7. This places them in the dilemma of having to forego Ryan White funding or being forced to discriminate against transgender patients living with HIV. *See* Pls.' Br. 20, 26.

As to constitutional ripeness, the imminent loss of funding, or loss of funding eligibility, because of the Challenged Conditions satisfies Article III's standing requirement. *See PFLAG, Inc. v. Trump*, 769 F.Supp.3d 405, 423 (D. Md. 2025) (finding challenge ripe for judicial review where "HRSA issued a notice to all grant recipients stating that: 'grant funds may not be used for activities

7

that do not align with' the Executive Orders"). A plaintiff's allegation that they "will likely lose federal funding" is a cognizable injury-in-fact. *SFAF*, 786 F.Supp.3d at 1209-10; *see also Am. Ass'n of Physicians for Hum. Rts., Inc. v. Nat'l Inst. of Health*, 795 F.Supp.3d 678, 693 (2025) ("*GLMA*") (plaintiffs had standing because they "suffered an injury in fact due to … the inability to apply for new Grants, related to LGBTQI+ health"); *Washington v. Trump*, 766 F.Supp.3d 1138, 1149 (W.D. Wash. 2025) ("The fact that the loss of funds may have not yet materialized … does not mean that there is no imminent injury or that Plaintiffs lack standing on this ground."). Here, the loss of funding or eligibility for funding is attributable to the Challenged Conditions. Pls.' Br. 7-10, 11.

Lastly, Defendants are incorrect that individual members of the Associational Plaintiffs must participate in order to adjudicate the claims in this case. Gov't Br. 15-16. Here, Plaintiffs' claims raise legal questions that can be resolved without the participation of individual members. Indeed, "individual participation is not normally necessary when an association seeks prospective or injunctive relief for its members." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996); *see also GLMA*, 795 F.Supp.3d at 694.[4]

### C.  Defendants Have No Discretion to Impose the Challenged Conditions.

Defendants argue that their decision to impose the Challenged Conditions is "committed to agency discretion" under 5 U.S.C. § 701(a)(2). Gov't Br. 16–18. Not so. The exemption from judicial review provided in that subsection is "'quite narrow[].'" *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019) (quoting *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018)). It applies only "when the agency action is of a kind 'traditionally regarded as committed

---

[4] Citing to a solitary concurrence by Justice Thomas, Defendants call into question associational standing altogether. Gov't Br. 16. Their argument borders on the frivolous. The Supreme Court reaffirmed the availability of associational standing in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199-200 (2023). *See also Speech First, Inc. v. Whitten*, 145 S. Ct. 701, 703 n.1 (2025) (Thomas, J., dissenting from denial of certiorari) (recognizing that "under our precedents, an association … can establish standing to sue on behalf of its members").

to agency discretion,' or when the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Commonwealth v. Trump*, No. 25-cv-12162, 2026 WL 1584837, at *19 (D. Mass. June 3, 2026). Defendants fail to make either showing. *See New York*, 171 F.4th at 19 (placing burden on Government).

*First*, "the determination of grant terms and conditions is not a category of decisions traditionally committed to exclusive agency discretion." *RICADV v. Bondi*, 794 F.Supp.3d at 69. Indeed, "courts have consistently found the opposite to be true." *RICADV v. Kennedy*, 812 F.Supp.3d at 192 (holding agencies' decision to "spring[ ] new conditions" onto federal grants was reviewable under APA); *see also*, *e.g.*, *Biden v. Missouri*, 595 U.S. 87, 92–96 (2022) (reviewing imposition of new conditions on Medicare and Medicaid grant funds); *City of Providence v. Barr*, 954 F.3d 23, 32–36 (1st Cir. 2020); *Massachusetts v. Dep't of Agric.*, No. 26-cv-11396, Op. at 41 (D. Mass. June 24, 2026) (ECF 72); *Illinois*, 801 F.Supp.3d at 91 & n.7 (collecting cases "presently reviewing discretionary grant conditions under the APA"). Defendants do not contend otherwise.

*Second*, contrary to Defendants' assertion, Gov't Br. 16–18, Congress *has* provided "meaningful standard[s]" to assess the legality of the Challenged Conditions. *See* Pls.' Br. 22–26. The Ryan White statute requires Defendants to provide "core medical services" for persons living with HIV. *See*, *e.g.*, 42 U.S.C. § 300ff-22(a). It then goes on to define those terms. *See*, *e.g.*, 42 U.S.C. § 300ff-22(b)(3); *see also* Pls.' Br. 22–23. Moreover, the ACA bars Defendants from "creat[ing] any unreasonable barriers to the ability of individuals to obtain appropriate medical care" or "interfer[ing] with communications regarding a full range of treatment options between the patient and the provider." 42 U.S.C. § 18114. In short, "this is not a case in which there is 'no law to apply.'" *Dep't of Com.*, 588 U.S. at 772–73; *see also Nat'l All. to End Homelessness v. Turner*, No. 25-cv-00447, 2026 WL 883437, at *1, *4 (D.R.I. Mar. 31, 2026) (holding HUD's new

9

NOFO conditions reviewable because "statutory framework … provide[s] meaningful standards").

Defendants' reliance on *Lincoln v. Vigil*, 508 U.S. 182 (1993), is therefore misplaced. In *Lincoln*, the Supreme Court held that § 701(a)(2) barred review of an agency's decision to terminate a program, which was funded through an undifferentiated "lump-sum appropriation." *Id.* at 184–85. The Court explained that "where 'Congress merely appropriates lump-sum amounts *without statutorily restricting* what can be done with those funds, a clear inference arises that it does not intend to impose legally binding restrictions" on the implementing agency's discretion. *Id.* at 192 (emphasis added). But the Court also stressed that when Congress "circumscribe[s] agency discretion to allocate resources by putting restrictions in the operative statutes," § 701(a)(2) does *not* bar judicial review. *Id.* at 193; *see also Freedom Network USA*, 2026 WL 800392, at *9.

Here, Congress did not just allocate a lump sum: It directed Defendants to help fund the creation of coordinated "systems of care" to reach underserved communities and improve overall health outcomes for people living with HIV. It defined categories of services that should be provided. And it created local planning councils and state consortia to assess local needs. *See* Pls.' Br. 3–5. Where Congress provides standards to guide spending in this fashion, agencies do not have carte blanche "to disregard [those] statutory responsibilities." *Lincoln*, 508 U.S. at 193; *see also*, *e.g.*, *Illinois*, 813 F.Supp.3d at 306–07 (holding *Lincoln* does not bar review of agency decision to impose condition onto program grants because the relevant "statutory and regulatory frameworks" "provide[d] judicially manageable standards for review"). Accordingly, Defendants have failed to establish that the Challenged Conditions are unreviewable under § 701(a)(2).

### D.  The Challenged Conditions Are Reviewable as Final Agency Action.

The Challenged Conditions are reviewable as "final agency action" under 5 U.S.C. § 704. Not only do Plaintiffs satisfy the two-prong test from *Bennett v. Spear*, 520 U.S. 154 (1997), *see*

10

*supra* 6-7, but Defendants fail to acknowledge – let alone rebut – the cases in Plaintiffs' opening brief that hold that the decision to attach new conditions to NOFOs is final agency action, regardless of whether the grants have yet been awarded. *See* Pls.' Br. at 13-14 (citing cases).

Plaintiffs' claims cannot be deflected as "generalized complaints about agency behavior" or a "broad programmatic attack" on all Ryan White Program funding. Gov't Br. 19 (quotation marks omitted). Rather, Plaintiffs bring a limited challenge to a discrete set of unlawful conditions imposed on Ryan White funds. Specific objections to unlawful conditions are actionable even where they apply program-wide or even across multiple agencies. *See*, *e.g.*, *New York*, 171 F.4th at 17–18 (rejecting argument that challenge was "an impermissible 'programmatic attack on [all] federal spending'" where plaintiffs challenged only "discrete, agency-wide categorical freeze that each of the Agency Defendants allegedly put in place"); *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (holding challenge was not impermissibly programmatic in nature because plaintiffs challenged an across-the-board agency practice in violation of a specific statutory command); *Massachusetts v. Kennedy*, 783 F.Supp.3d 487, 500 (D. Mass. 2025).

## II.   Plaintiffs Are Likely to Succeed on the Merits of Their Claims.

### A.  The Challenged Conditions Are Arbitrary and Capricious.

The Challenged Conditions are arbitrary and capricious because they (i) are contrary to the purpose and structure of the Ryan White program, which aims to provide comprehensive care targeted to underserved populations and informed by local experience; (ii) ignore the scientific evidence before the agency showing the success of an inclusive program in fostering retention in treatment and viral suppression; and (iii) represent an abrupt reversal of agency policy unaccompanied by any consideration of reliance interests or the likely public health impact of excluding and stigmatizing transgender people with HIV. *See* Pls.' Br. 15–20. Defendants fail to

11

grapple with these arguments. Gov't Br. 21–22. They have waived contrary arguments. *See Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988); *Grafton & Upton Railroad Co. v. Town of Hopedale*, No. 22-cv-40080, 2023 WL 2761205, at *13 (D. Mass. Mar. 31, 2023).

Defendants also fail to demonstrate that they gave *any* consideration to these issues in formulating the Challenged Conditions. Instead, they assert that the Challenged Conditions were adopted to "align with the administration's goals and the President's executive orders." Gov't Br. 6–7. But merely declaring "changes" in administration "priorities" (Gov't Br. 22) does not satisfy *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), *cited in* Pls.' Br. 14. "Everyone agrees that an agency's change of mind does not itself render the agency's action arbitrary. What matters is the [agency's] explanation for its decision." *Bell Atlantic Tel. Co. v. FCC*, 79 F.3d 1195, 1202 (D.C. Cir. 1996). Yet, Defendants' have provided no explanation at all.

The closest Defendants appear to come to giving a "reason" for their change in priorities, other than anti-transgender animus, is to prevent Ryan White funds from being used "for purposes unrelated to the statute." Gov't Br. 7. But this purported rationale disregards that providing comprehensive medical care and ensuring retention in HIV treatment are, in fact, core purposes of the statute. *See supra* I.C. Defendants assert that they conducted a "systematic review of the grant awards and the agency's priorities" to "determine whether funding under the Ryan White Program comported with statutory requirements and administrative priorities." Gov't Br. 22. But they have provided absolutely no evidence of this alleged review. Defendants assert that "[t]he record shows reasoned consideration," Gov't Br. at 22, yet failed to provide any such record. This leaves the Court with no basis to validate the agency's actions. *See Dep't of Com.*, 588 U.S. at 780. Defendants effectively tell this Court: "Trust us, we did our job." That is not enough.

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009), is not to the contrary. Per *Fox*,

12

when an agency's "new policy rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account," the agency *must* provide a more robust justification than would suffice for a policy "created on a blank state." *Id.* at 515. "An agency may not … depart from a prior policy *sub silentio*. … [T]he agency must show good reasons for the new policy." *Id.* "[T]o ignore such matters" is "arbitrary and capricious." *Id.*; *see also Am. Hosp. Ass'n v. Kennedy*, 164 F.4th 28, 33 (1st Cir. 2026) (record "devoid of evidence" that agency considered "significant reliance interests" is "a critical factor in the analysis of an arbitrary-and-capricious claim"). That is the case here.

### B.  The Challenged Conditions Are Contrary to Law.

Defendants do not meaningfully respond to Plaintiffs' claim that the Challenged Conditions run afoul of the Ryan White statute, which requires that gender-affirming medical care be covered as a "core medical service." Pls.' Br. 3-5. This alone is sufficient to set aside the Challenged Conditions. Defendants' failure to address this argument constitutes waiver. *See*, *e.g.*, *United States v. Cardona*, 88 F.4th 69, 75 n.2 (1st Cir. 2023). As to Section 1554 of the ACA, Defendants ignore Plaintiffs' cited case law and instead invoke *Rust v. Sullivan*, 500 U.S. 173 (1991), for the assertion that the Supreme Court distinguishes between "regulations that impose burdens on health care providers and their clients and those that merely reflect Congress's choice not to subsidize certain activities." Gov't Br. 21. But unlike *Rust*, this case is not about *Congress* deciding not to fund certain activities. It is about *Defendants* trying to curtail funding for care that Congress has already authorized. *See* Pls.' Br. 22-23. And Defendants' actions directly burden access to healthcare, in violation of Section 1554. *See* Pls.' Br. 23-26.

### C.  Defendants Lack Authority to Impose The Challenged Conditions.

Defendants argue that the Challenged Conditions do not violate "the Separation of Powers principle" because "[a]gencies naturally exercise interpretive discretion in determining whether

13

activities fall within or outside a program's scope." Gov't Br. 22. But this begs the question whether Defendants have exercised discretion that Congress intended them to have. It is for this Court to exercise its "independent judgment," *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024), to determine whether Defendants have gone "beyond what Congress has permitted [them] to do," *City of Arlington v. F.C.C.*, 569 U.S. 290, 298 (2013). *See also Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*, 779 F.Supp.3d 149, 197 (D.N.H. 2025). Defendants have exceeded their mandate by engrafting funding conditions in violation of the Appropriations Clause and by effectively amending the Ryan White statute in violation of Articles I and II. *See* Pls.' Br. 26-30.

Unlike the lump sum appropriation at issue in *Lincoln*, 508 U.S. at 192, Congress provided direction for how Ryan White funds are to be spent, which sharply limits Defendants' discretion: to support not just HIV treatment, but *comprehensive* medical care for *all* people living with HIV, targeting underserved communities, with the goal of strengthening retention and adherence. Pls.' Br. 3-5, 15-17, 21-23. Providing gender-affirming medical care fits within this Congressional mandate, whether or not the statute mentions it "explicitly." Gov't Br. 23. It is part of "core medical services," which encompass "outpatient and ambulatory health services," including for "co-occurring conditions" such as gender dysphoria. Pls.' Br. 22-23. Receiving such care maximizes retention and adherence to HIV treatment for transgender people living with HIV. Pls.' Br. 5. The Challenged Conditions thwart these core Congressional objectives.

Against this powerful showing, Defendants have virtually nothing to say, merely stating—with no support in the statute, the legislative history, the record, or common sense—that gender-affirming care "deviates from the statutory objective of providing treatment for HIV/AIDS" and that barring it "reflects adherence to Congressional intent and statutory boundaries." Gov't Br. 24. The opposite is true. Defendants recognize that they must, under the Constitution, act "in

14

accordance with statutory authorization and not in defiance of it." Gov't Br. 24. But they do not explain how denying transgender people medical care that promotes adherence to HIV treatment puts them on the right side of that dichotomy.

In any event, the Challenged Conditions sweep more broadly than merely restricting gender-affirming medical care. They also "condition the issuance of Ryan White grants on whether the recipient promotes 'gender ideology,' denies the 'sex binary' in humans, [or] expresses the belief that sex is a 'chosen or mutable characteristic.'" Pls.' Br. 28; *see* Compl. ¶¶ 164–87. Congress did not authorize such restrictions, which *frustrate* its intent by burdening patient communication and preventing healthcare professionals from treating their transgender patients with respect and dignity. Pls.' Br. 5-7. These aspects of the Challenged Conditions *also* exceed Defendants' statutory authority. Pls.' Br. 28. Defendants offer no response.

### D.  The Challenged Conditions Unlawfully Discriminate.

Defendants fail to undermine Plaintiffs' contention that the Challenged Conditions unlawfully discriminate in violation of the ACA and the Fifth Amendment. First, Defendants make only passing reference to Plaintiffs' allegation that the Challenged Conditions violate Section 1557 of the ACA. But Defendants misapprehend Plaintiffs' claim: Plaintiffs do not contend that Section 1557 "mandate[s] that covered entities affirmatively fund or seek to benefit any particular group regardless of that group's minority status." Gov't Br. 25. Rather, Plaintiffs assert that the requirement that recipients of Ryan White funding stop respecting their transgender patients' identities and stop providing necessary gender-affirming medical care because it promotes "gender ideology" is discrimination based on transgender status and sex in violation of Section 1557.

The decision in *West Virginia v. B.P.J.* does not change this analysis. *See* No. 24-38, 2026 WL 1868739 (U.S. 2026). In upholding the state's law regarding sex-segregated school sports, the Supreme Court emphasized the unique nature of sports and relied on the fact that "Title IX

15

authorizes separate men's and women's sports teams." *Id*. at \*9; *id.* at \*18 (Gorsuch, J., concurring) (reaffirming that "discriminating against a person for being homosexual or transgender necessarily entails discriminating against that person at least in part *because of* … sex" (emphasis added)).

Second, the Challenged Conditions do not survive equal protection scrutiny. Defendants contend the Challenged Conditions classify based on "medical use" and warrant only rational basis review. Gov't Br. 25. Not so. The Conditions direct that funding recipients: not "promote gender ideology"; "recognize that a person's sex … is unchangeable"; and certify compliance with the Gender Order. Beyond simply limiting a specific medical treatment, they constitute a much broader attack on Plaintiffs' provision of affirming and respectful healthcare to transgender people.[5]

The Supreme Court's decision in *B.P.J.* underscores that intermediate scrutiny is required for sex-based classifications, such as the ones at issue here. *See* 2026 WL 1868739, at \*10.[6] Indeed, the Challenged Conditions expressly require funding recipients to "[a]pply[] *sex-based* definitions grounded in biological reality," require recipients to "recognize that a person's *sex* as either male or female is unchangeable and determined by objective biology," and "ensure its programs accurately reflect … the biological reality of *sex*." Dkts. 19-2 at 5, 19-3 at 4 (emphasis added).

Finally, even if this Court finds that the Challenged Conditions are not subject to intermediate scrutiny, Defendants do not even attempt to rebut the argument that the Challenged Conditions are based upon invidious discrimination, and thus, under binding First Circuit precedent, subject to a more searching review than ordinary rational basis review. *See Massachusetts v. U.S. Dep't of Health & Hum. Servs.*, 682 F.3d 1, 11 (1st Cir. 2012). And here, the

---

[5] In fact, only one NOFO, from 2025, mentions gender-affirming medical care at all. *See* Dkt. 19-4 at 41.

[6] In *B.P.J.*, the Supreme Court declined to reach the question of whether classifications based on transgender status require heightened scrutiny. 2026 WL 1868739, at \*14. However, other courts, including courts in the First Circuit, have found both that classifications based on transgender status are classifications based on sex and that such classifications independently warrant heightened scrutiny. Pls.' Br. 32-33.

16

Administration has mounted a sustained campaign against transgender people that is based on animus. *See*, *e.g.*, *Talbott v. United States*, 176 F.4th 720, 746 (D.C. Cir. 2026) (finding policy excluding transgender people from the military "was premised, at least in part, on a non-legitimate state interest to harm the politically unpopular group of transgender persons"); Pls.' Br. 34.

### E.  The Challenged Conditions Violate the First Amendment.

With regards to Plaintiffs' First Amendment claim, Defendants mischaracterize their extra-statutory limitations as merely "selectively funding a program to encourage certain activities," Gov't Br. 27, to avoid the unconstitutional-conditions doctrine, explained in Plaintiffs' brief (pp. 34-37). But the Challenged Conditions go well beyond not funding a specific activity; they require recipients to discriminate against transgender patients living with HIV by prohibiting providers from acknowledging, affirming, or respecting their identities.

In any event, even in selective subsidy programs, the Government may not leverage discretionary funding criteria into a penalty on disfavored viewpoints or aim at the suppression of dangerous ideas. *See* Pls.' Br. 36-37; *see also Chiles v. Salazar*, 146 S. Ct. 1010, 1029 (2026) ("[T]he First Amendment stands as a shield against any effort to enforce orthodoxy in thought or speech in this country."); *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 380–81, 398–99 (1984); *McGuire v. Reilly*, 386 F.3d 45, 62 (1st Cir. 2004); *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 82, 95 (1st Cir. 2004) ("The bedrock principle of viewpoint neutrality demands that the state not suppress speech where the real rationale for the restriction is disagreement with the underlying ideology or perspective that the speech expresses."). "Where private speech is involved, even Congress' antecedent funding decision cannot be aimed at the suppression of ideas thought inimical to the Government's own interest." *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548–49 (2001). Nor may the Government "leverage funding to regulate speech outside the contours of

17

the program itself." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214–15 (2013); *see also Thakur v. Trump*, 176 F.4th 1187, 1199-1204 (9th Cir. May 26, 2026) (holding denying funding to DEI-related research constitutes unlawful viewpoint discrimination).

The Challenged Conditions do not merely attempt to prohibit certain aspects of care (notwithstanding that these are permitted by the Ryan White Program); they direct the providers to eschew decency and respect for transgender patients seeking comprehensive HIV care lest providers be punished for promoting gender ideology. They are an unlawful subsidy-as-penalty.

### III.    Plaintiffs and Their Patients Will Experience Irreparable Harm.

Defendants mischaracterize Plaintiffs' injuries as "essentially economic." Gov't Br. 29–30. Not so. The Challenged Conditions will injure Plaintiffs' medical practices by forcing them to dismantle integrated systems of HIV care, fracture provider-patient relationships, harm their careers and reputations, and force them to violate their ethical duties. In addition, Defendants ignore the irreparable harm to patients who will lose or have diminished access to HIV care and gender-affirming medical care, which will endanger their health. *See* Pls.' Br. 7-10, 37-39. These harms cannot be remedied after the fact. Nor can the deprivation of Plaintiffs' constitutional rights.

The balance of equities and public interest likewise strongly favor relief. Defendants' sole argument is a supposed fiscal interest in avoiding the expenditure of funds they might later be unable to recover. Gov't Br. 31–32. But they will award the same amount of funding regardless. Preliminary relief would not enlarge those pools or compel spending outside the Ryan White Program; it would govern only the terms on which HRSA makes the announced awards while this case is litigated. By contrast, preliminary relief would further the public interest. Pls.' Br. 39-40.

### IV.    Plaintiffs Are Entitled to the Requested Scope of Relief.

Defendants attempt to reframe the appropriate preliminary relief as overbroad. It is not.

*First*, contrary to Defendants' plea, Gov't Br. 32, "[t]he APA's remedies are not party-

18

restricted and allow a court to set aside an unlawful agency action." *Ass'n of Am. Universities v. Dep't of Def.*, 806 F.Supp.3d 79, 123 (D. Mass. 2025); *id.* at 120-23 (collecting case law); *see also Career Colleges & Schs. of Texas v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) ("[W]e conclude that the scope of preliminary relief under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party-restricted and allows a court to 'set aside' an unlawful agency action.") (subsequent history omitted); *Afr. Communities Together v. Noem*, 820 F.Supp.3d 48, 72 (D. Mass. 2026) ("relief pursuant to § 705 does not operate *in personam*, but rather functions as a temporary form of vacatur" (citation modified)).

Second, Defendants are wrong to suggest that remand is the appropriate remedy under the APA. Gov't Br. 30. For one, relief under 5 U.S.C. § 705 seeks only to "preserve status or rights" while a case proceeds. Remand only happens *after* a case is finally adjudicated. For another, "[t]he normal remedy for a successful APA challenge is vacatur of the rule and its applicability to all who would have been subject to it." *Massachusetts v. Nat'l Institutes of Health*, 770 F.Supp.3d 277, 329 (D. Mass. 2025), *aff'd*, 164 F.4th 1. Moreover, remand would not be appropriate here given "the severity of the errors," the likelihood that they cannot "be mended without altering the order," and "the balance of equities and public interest." *Town of Weymouth. v. Mass. Dep't of Env't Prot.*, 961 F.3d 34, 58 (1st Cir.), *on reh'g*, 973 F.3d 143 (1st Cir. 2020). Here, remand would do nothing to cure the fundamental defects that plague the Challenged Conditions, such as them being contrary to law or constitutional rights or power and without authority. *See Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218, 1230 (D.C. Cir. 2026); *Ass'n of Am. Universities*, 806 F.Supp.3d at 124.

Third, Defendants err in urging that relief be limited to *only* Provider Plaintiffs, excluding Associational Plaintiffs' members. Gov't Br. 32. When organizations establish standing on their members' behalf, preliminary relief extends to those members who are likely to suffer irreparable

19

harm. *See N.H. Indonesian Cmty. Support v. Trump*, 157 F.4th 29, 35 (1st Cir. 2025), *cert. denied*, No. 25-899, 2026 WL 1871309 (U.S. June 30, 2026). "[N]o additional showing is necessary to afford relief to all [] members of Organizational Plaintiffs." *Ass'n of Am. Universities v. Dep't of Def.*, 792 F.Supp.3d 143, 183 (D. Mass. 2025); *see also Oregon Council for Humans. v. U.S. DOGE Serv.*, 794 F.Supp.3d 840, 896 (D. Or. 2025) ("Within the principles of … associational standing, the Court properly may order injunctive relief for the Federation's members.").[7]

## V.    A Stay of Preliminary Relief and a Bond Are Inappropriate.

Defendants' request for a stay pending appeal is procedurally improper. *See* Fed. R. Civ. P. 7(b)(1) (motion required for court order); Fed. R. App. P. 8(a)(1)(A) (motion required for stay order); *PFLAG*, 769 F.Supp.3d at 454. Plus, Defendants cite no authority for their request—beyond a case "setting forth the [stay] factors." Gov't Br. 32–33. At any rate, Defendants are unlikely to succeed on appeal and do not face irreparable harm. Defendants' request for an administrative stay fares no better. The only basis they offer for such a stay is "to seek an emergency, expedited stay from the First Circuit." Gov't Br. 33. But here it is Plaintiffs who seek to maintain the *status quo*.

Furthermore, no bond should be required. "Unlike a preliminary injunction, a stay under 5 U.S.C. § 705 does not require the movant to post a bond." *Nat'l Parks Conservation Ass'n v. Dep't of the Interior*, No. 26-CV-10877, 2026 WL 1706963, at \*27 (D. Mass. June 12, 2026). And the Court should exercise its discretion to forgo a bond. *See* Pls.' Br. 40. At minimum, any bond should be nominal. *See Maine v. U.S. Dep't of Agric.*, 778 F.Supp.3d 200, 237–38 & n.13 (D. Me. 2025).

## CONCLUSION

The Court should grant Plaintiffs' motion and enter the proposed order.

Dated: July 2, 2026

---

[7] Defendants cite no authority for their assertion that providers should each bring individual cases to receive preliminary relief, Gov't Br. 31, instead of relying on Associational Plaintiffs' standing to seek relief for their members.

Respectfully submitted,

*/s/ Omar Gonzalez-Pagan*

Jeffrey S. Trachtman*
Jason M. Moff*
Hannah Kanter*
Stephen P. Ferguson*
**HERBERT SMITH FREEHILLS
KRAMER (US) LLP**
1177 Avenue of the Americas
New York, NY 10036
Telephone: 212-715-9100
Facsimile: 212-715-8000
jeffrey.trachtman@hsfkramer.com
jason.moff@hsfkramer.com
hannah.kanter@hsfkramer.com
stephen.ferguson@hsfkramer.com

Ryan P. Trumbauer*
**HERBERT SMITH FREEHILLS
KRAMER (US) LLP**
2000 K Street NW, 4th Floor
Washington, DC 20006
Telephone: 202-775-4500
Facsimile: 202-775-4510
ryan.trumbauer@hsfkramer.com

* Admitted *pro hac vice*.

Omar Gonzalez-Pagan (BBO No. 678517)
Jose I. Abrigo*
Jessica Polansky*
Charlie Ferguson*
**Lambda Legal Defense
and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, New York 10005
Telephone: 212-809-8585
Facsimile: 855-535-2236
ogonzalez-pagan@lambdalegal.org
jabrigo@lambdalegal.org
jpolansky@lambdalegal.org
cferguson@lambdalegal.org

Kenneth D. Upton, Jr.*
**Lambda Legal Defense
and Education Fund, Inc.**
3656 North Halsted Street
Chicago, Illinois 60613
Telephone: 312-663-4413
Facsimile: 855-535-2236
kupton@lambdalegal.org

Pelecanos*
**Lambda Legal Defense
and Education Fund, Inc.**
800 South Figueroa St., Suite 1260[†]
Los Angeles, California 90017
Telephone: 213-382-7600
Facsimile: 855-535-2236
pelecanos@lambdalegal.org

[†] Mailing address only

21

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed using the Court's CM/ECF system, and that service was effected by and through the Court's CM/ECF system, which sends it electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: July 2, 2026

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan (BBO No. 678517)

22