**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMERICAN ACADEMY OF HIV MEDICINE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH RESOURCES AND SERVICES ADMINISTRATION, *et al.*,<br><br>Defendants. | Case No. 26-cv-12638-WGY |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## INTRODUCTION

Defendants respectfully move to dismiss Plaintiffs' complaint, which asserts seven claims asking the Court to review and set aside certain terms and conditions on which the Health Resources and Services Administration ("HRSA"), an agency within the U.S. Department of Health and Human Services ("HHS"), awards grants under Title XXVI of the Public Health Service Act, established by the Ryan White Comprehensive AIDS Resources Emergency Act of 1990 (the "Ryan White statute" or the "Ryan White program"). Specifically, Plaintiffs challenge 1) HRSA's fiscal year 2026 General Terms and Conditions (March 11, 2026 version), which apply to all funding administered by HRSA; and 2) certain terms included in Notices of Funding Opportunities ("NOFOs") under the Ryan White program (collectively, the "challenged conditions").

All of Plaintiffs' claims face a threshold barrier: this Court lacks subject matter jurisdiction over them. A threshold barrier to Plaintiffs' claims is their lack of ripeness for judicial adjudication.

Plaintiffs' claims are premature because no funds have been awarded, so any harm from the challenged conditions remains speculative and contingent on future events. For purposes of determining standing, as Supreme Court precedent teaches, the focus is properly on the status of the party pursuing the complaint and not on the merits of the case. Here, Plaintiffs have not alleged sufficiently that they have suffered an injury that is direct, distinct, and palpable, as opposed to simply conjectural, as their concerns pertain only to *future* grant awards and subsequent funding. Mere interest in an issue does not satisfy the injury-in-fact requirement commanded by Article III, Section 2 of the United States Constitution and, for this reason alone, Plaintiffs lack standing.

This Court lacks subject matter jurisdiction over Plaintiffs' APA claims for yet another reason: Plaintiffs seek to challenge non-final, non-discrete agency actions that are generally committed to agency discretion by law. The inclusion of terms and conditions in program administration documents does not constitute final agency action. Instead, Plaintiffs' claims are best understood as broad programmatic attacks on the government's priorities, which are impermissible under the APA.

Further, this case (once it is ripe for hearing) would belong, pursuant to the Tucker Act, 28 U.S.C. § 1491, in the Court of Federal Claims because the crux of Plaintiffs' claims is ultimately tethered to express contracts with the United States. Though Plaintiffs may contend that their claims turn on the "unlawfulness" of the challenged conditions and thus are rooted in alleged constitutional and statutory violations, including the Administrative Procedure Act ("APA"), no amount of artful pleading can hide that all of Plaintiffs' purported harms flow from the conditions of prospective grant agreements that satisfy the essential elements of a contract. To be sure, some

sessions of this court have exercised jurisdiction in cases arising out of grant agreements.[1] But other courts have declined to circumvent the Tucker Act where, as here, the source of the rights for the plaintiffs' claims is the grant agreements themselves—a more reasoned view consistent with *Department of Education v. California*, 145 S. Ct. 966 (2025). *See*, *e.g.*, *Solutions in Hometown Connections v. Noem*, No. 25-cv-00885-LKG, 2025 WL 1530318 (D. Md. May 29, 2025). This Court should adopt that approach in this case.

For these reasons, and as described more fully below, this Court should dismiss Plaintiff's Complaint.

## BACKGROUND

### I. Factual Background

The Ryan White statute, codified as amended at 42 U.S.C. §§ 300ff-11 to 300ff-140, was enacted by Congress in 1990 to "provide emergency assistance to localities disproportionately affected by the HIV epidemic and to make financial assistance to States and other public and private nonprofit entities to provide for the development, organization, coordination, and operations of more effective and cost-efficient systems for the delivery of essential services to individuals and families with HIV disease." P.L. 101-318 § 2.

The Ryan White program is administered by HRSA. Compl. ¶ 5. HRSA issues both discretionary and non-discretionary grants and cooperative agreements, as well as other types of awards that constitute federal financial assistance. *See* 2 C.F.R. § 200.1 (Definitions). When federal funds for grants and cooperative agreements are made available by Congress, HRSA prepares and publishes a Notice of Funding Opportunity (NOFO) on grants.gov to advertise the

[1] *See*, *e.g.*, *Association of Am. Universities v. Dep't of Energy*, 789 F. Supp. 3d 118 (D. Mass. 2025); *Massachusetts v. Nat'l Instits. of Health*, 770 F. Supp. 3d 277 (D. Mass. 2025).

availability of award funds and to solicit applications for awards. *See* 2 C.F.R. § 200.204 (Notices of Funding Opportunities).

On September 15, 2025, HRSA published updated priorities to align with the administration's goals and the President's executive orders.[2] To implement these priorities, HRSA updated its General Terms and Conditions for all subsequent NOFOs. For example, the current version of HRSA's fiscal year 2026 General Terms and Conditions, which apply to all awards issued by HRSA on or after March 11, 2026, provide that, "[a]s a condition of the award, you must ensure that all activities funded under this award are implemented in a manner consistent with HRSA's mission and strategic priorities as authorized by law." ECF No. 1-1, at p. 6. These priorities include "recogniz[ing] that a person's sex as either male or female is unchangeable and determined by objective biology, and to ensure its programs accurately reflect science, including the biological reality of sex." *See* FN3. These priorities also include ensuring that government funds issued under the Ryan White program are used for purposes of the statute only. *See id.*

Similarly, the challenged NOFOs in connection with the Ryan White program include, for example, the following conditions:

- "if an [AIDS Drug Assistance Program] provides sex hormones, it may only allow such hormones to be dispensed to treat HIV/AIDS or prevent the serious deterioration of health arising from HIV/AIDS, rather than for non-statutory purposes such as specific sex-trait modification procedures." ECF No. 1-1, at p. 6.

- awards "shall not be used to fund, promote, encourage, subsidize, or facilitate . . . denial by the recipient of the sex binary in humans, or the belief that sex is a chosen or mutable characteristic," and warns that applications that do not align with those requirements "will not receive funding to the extent permitted by law and applicable court orders." ECF No. 1-2, at pp. 2-51.

---

[2] https://www.hrsa.gov/about/priorities (last visited June 26, 2026).

The NOFOs at issue in this case span the Ryan White HIV/AIDS Program. Under Part B, which awards funds to states and territories, HRSA issued two NOFOs. The first, posted on October 2, 2025, is intended to award emergency relief funding to states and territories to support their AIDS Drug Assistance Programs (ADAPs). Applications were due November 3, 2025. Next, HRSA posted a NOFO on June 8, 2026, for Part B Supplemental awards. These awards are intended to go to states and territories to supplement formula awards under Part B, allowing jurisdictions to increase care for low-income people living with HIV and AIDS. Applications were due July 10, 2026. The Part C Capacity Development NOFO was posted on June 5, 2026. These funds are intended to support short-term projects that strengthen organizational capacity to develop, enhance, or expand access to high quality HIV care and treatment for low-income people with HIV, especially for people not yet in regular HIV care. Applications were due July 8, 2026. Finally, the Part F Dental Reimbursement NOFO was posted on June 8, 2026. This program allows dental schools and other dental education programs to seek reimbursement for certain costs when they have provided uncompensated or partially uncompensated oral health care to people with HIV. Applications were due July 10, 2026. On June 11, 2026, the Part D Coordinated HIV Services and Access to Research for Women, Infants, Children, and Youth (WICY) Existing Geographic Service Areas NOFO was posted. This award funds family-centered HIV care and support services in outpatient or ambulatory settings. Applications were due July 13, 2026. As of the date of filing of this motion, no funds have been awarded under any of these NOFOs.

## II. Procedural Background

Plaintiffs filed this action on June 10, 2026, claiming that HRSA's actions to ensure that funding under the Ryan White statute are limited to the scope prescribed by Congress violates the APA, the First and Fifth Amendments, and the Affordable Care Act ("ACA"). Compl., ECF No.

1. The Complaint seeks, among other things, preliminary and permanent injunctive relief enjoining Defendants from "implementing, enforcing, effectuating, or giving effect to the Challenged Conditions[.]" *Id.* at pp. 69-70.

That same day, Plaintiffs filed a Motion for Preliminary Injunction and Preliminary Relief under 5 U.S.C. § 705, broadly asking the Court to enjoin the Challenged Conditions pending resolution of this case. Pl. Motion, ECF No. 9; Pl. Memo, ECF No. 10. Pursuant to Fed. F. Civ. P. 65(a), this Court collapsed Plaintiffs' Motion for Preliminary Injunction and Preliminary Relief with a trial on the merits scheduled for September 23, 2026. Doc. No. 49.

## LEGAL STANDARDS

A court should dismiss claims under Rule 12(b)(1) when it lacks jurisdiction to decide them. "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). "A plaintiff, however, may not rest merely on unsupported conclusions or interpretations of law." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (citation omitted). "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993).

In addition, a court should dismiss claims under Rule 12(b)(6) when the underlying allegations fail "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court should thus dismiss a claim "if the complaint does not set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 384 (1st

Cir. 2011) (quoting *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008)). In making this determination, the court should disregard legal conclusions but must treat "[n]on-conclusory factual allegations" as true. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). Ordinarily, the dispositive question in an APA case concerns "not whether the facts set forth in a complaint state a plausible claim but, rather, whether the administrative record sufficiently supports the agency's decision." *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013). "This does not mean, however, that Rule 12(b)(6) can never be in play in an APA [case]." *Id.* at 76 n.4. As the First Circuit has explained, "[s]uch a motion may be appropriate in certain circumstances," including where, as here, "the agency claims that the underlying premise of the complaint is legally flawed (rather than factually unsupported)." *Id.*

## ARGUMENT

### I. This Court Lacks Jurisdiction Over Plaintiff's Claims.

#### A. Plaintiffs' Claims Are Not Ripe.

Ripeness requires the Court to weigh the fitness of the issues for judicial decision against the hardship to the parties of withholding consideration. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). Both prongs point to dismissal here. Plaintiffs do not allege that HHS has taken any prejudicial actions against them as applicants or enforcement actions against them as recipients. Because Plaintiffs have not been impacted yet by the terms they challenge, this case is not ripe.

The Supreme Court rejected a similar challenge in *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803 (2003). There, a trade association facially challenged a regulation governing its members' future concession contracts. Because the regulation's operation could vary from contract to contract, "further factual development would significantly advance

our ability to deal with the legal issues presented." *Id.* at 812. Judicial resolution "should await a concrete dispute about a particular concession contract." *Id.* The NOFO's priority considerations operate application by application, to the extent permitted by law. *See e.g,* ECF No. 1-4, at 36. Whether a lack of alignment with HRSA's priorities would affect an award decision cannot be known until funding decisions are made.

This uncertainty is magnified for the Provider and Associational Plaintiffs, who are not (and will not be) recipients or sub-recipients of any award. Any effect on Plaintiffs thus depends on whether and how potential grant recipients respond to conditions that have not yet been imposed on any award they hold. That additional layer of contingency confirms that factual development must occur before Plaintiffs' claims present a concrete dispute suitable for judicial resolution. *National Park Hospitality Ass'n*, 538 U.S. at 812.

Nor do Plaintiffs identify a cognizable present hardship. Any burden associated with anticipating how a future award term might affect a grant recipient's operations is speculative and derivative of decisions those recipients, not Plaintiffs, will make if and when an award issues. Absent an award decision applying the challenged conditions to a specific recipient and the recipient's response to those conditions, Plaintiffs' claims rest on prediction rather than a concrete dispute ripe for judicial resolution. Because Plaintiffs' claims are unfit for review and withholding consideration imposes no cognizable hardship, the Court should dismiss the Complaint as unripe.

**B. Plaintiffs Also Lack Article III Standing.**

Beyond ripeness, Plaintiffs' claims independently fail for lack of standing. The Constitution limits the exercise of judicial power to "'cases' and 'controversies.'" *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239 (1937) (citing U.S. Const. art. III, § 2). For a "case or controversy" to exist, a litigant must have standing to bring the claim. *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing, a plaintiff must demonstrate that it (1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *See id.* at 560–61. "The injury-in-fact requirement ensures that plaintiffs have a 'personal stake in the outcome of the controversy.'" *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "Injury in fact is 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)).

A plaintiff seeking prospective relief must show "a sufficient likelihood of future injury." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367381 (2024). The harm must be "certainly impending" or present a "substantial risk" of occurring. *North Carolina State Conference of NAACP v. North Carolina State Bd. of Elections*, 283 F. Supp. 3d 393, 399 (M.D.N.C., 2017) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan*, 504, U.S. at 564 n.2).

Plaintiffs cannot identify future grant awards that do not yet exist. Even if such an award issued, any harm to Plaintiffs would depend on how the recipient institutions, not Plaintiffs, choose to respond to conditions imposed on funding of which Plaintiffs are not a recipient or subrecipient. Plaintiffs can only speculate about this doubly contingent harm that might befall them absent injunctive relief. Their "theory of future injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" *Clapper*, 568 U.S. at 401

(quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Moreover, the organizational plaintiffs in this case do not have associational standing. An association has standing to bring suit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claims asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The Associational Plaintiffs fail the first and third requirements.

The Complaint does not allege that the Associational Plaintiffs have a single identified member who has suffered an injury any more concrete or imminent than the speculative injury described above. It alleges only that members generally "rely on" Ryan White funding, Compl. ¶¶ 24, 33, or that funding supports the systems where members practice, Compl. ¶¶ 26, 31, 35. The Associational Plaintiffs ask this Court to infer standing from members' generalized professional reliance on funding tied to future awards that do not yet exist, not from any member's non-speculative, imminent injury.

Whatever individualized harm the declarations the organizational plaintiffs submitted in support of their Motion for Preliminary Injunction attempt to establish, the Complaint itself does not plead facts sufficient to identify which, if any, member has suffered a concrete and imminent injury. The number of declarations the organizational plaintiffs submitted confirms as much: the Associational Plaintiffs could not rely on generalized allegations of reliance on Ryan White funding alone, even at the preliminary injunction stage, and instead needed individual members to attest to their own circumstances. That same individualized showing is missing from the Complaint, and its absence defeats both standing and *Hunt*'s third requirement that the claims not require individual member participation. Because the Complaint does not identify which members

have suffered a non-speculative injury, the individualized inquiry Plaintiffs seek to avoid remains an open threshold question.

More fundamentally, the theory of associational standing is misguided: It (1) improperly "relaxes both the injury and redressability requirements for Article III standing" by allowing the association to assert and obtain relief for someone else's injury (even in the absence of an injury of its own); (2) "subverts the class action mechanism" by allowing what amounts to classwide relief outside the strictures of Rule 23; and (3) creates the "possibility of asymmetrical preclusion," where the members might not be bound by the association's loss in litigation. *See FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 399-403 (2024) (Thomas, J., concurring). Thus, while Defendants acknowledge that the Supreme Court has recognized the theory of associational standing, they preserve their challenge to the theory of associational standing for further review.

### C. APA review is unavailable because the challenged actions are committed to agency discretion by law.

The APA's waiver of sovereign immunity, 5 U.S.C. §§ 702, 706(1)–(2), does not extend to agency action "committed to agency discretion by law." *Id.* § 701(a)(2). Agency action is committed to agency discretion when a "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," rendering "meaningful judicial review . . . impossible." *Steenholdt v. FAA*, 314 F.3d 33, 638 (D.C. Cir. 2003) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). This is true "even where Congress has not affirmatively precluded review." *Heckler*, 470 U.S. at 830.

"Congress may limit an agency's exercise of enforcement power if it wishes," but only when "it has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion," is there "law to apply" under § 701(a)(2). *Id.* at 833–34. Decisions are "general[ly] unsuitabl[e]" for judicial review when they

require "a complicated balancing of a number of factors which are peculiarly within [agency] expertise" or involve how best to spend "agency resources," including whether the agency "is likely to succeed if it acts" and "whether the particular enforcement action requested best fits the agency's overall policies." *Id.* at 831. "The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* at 831–32. Hallmarks of a decision committed to agency discretion include a statute that puts the onus on the agency, not the courts, to apply a standard, *see Webster v. Doe*, 486 U.S. 592, 600 (1988), and general criteria that make it difficult for courts to meaningfully second-guess an agency determination, *see id.*

An agency's determination of how best to allocate and condition appropriated funds to fulfill its legal and policy mandates is discretionary agency action. *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993). In *Lincoln*, the Court explained that there is no waiver of sovereign immunity where agency action requires "a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," including whether "resources are best spent on one program or another; whether it is likely to succeed in fulfilling its statutory mandate; whether a particular program best fits the agency's overall policies; and, indeed, whether the agency has enough resources to fund a program at all." *Id.* (citations omitted). An "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.*

The challenged conditions here are committed to agency discretion by law. The statute contemplates broadly drawn topics and guidelines that would not provide a meaningful rubric for judicial review. Congress has not provided any "law to apply" with respect to what constitutes "core medical services" and "support services" for individuals living with HIV, 42 U.S.C. §§ 300ff-14(a), 300ff-22, 300ff-51, which is the statutory language that Plaintiffs claim requires the federal government to fund "gender affirming care" under the program. Consequently, the government's

determination of what services to fund requires a "complicated balancing of a number of factors peculiarly within the agency's expertise." *Heckler*, 470 U.S. at 831. Accordingly, the challenged conditions are within the agency's discretion under *Lincoln*.

**D. APA review is unavailable because HRSA's actions are not discrete, final agency actions.**

APA review is available in most cases only for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. District court review is "inappropriate [where] 'final agency action,' a prerequisite for judicial review, had not yet occurred." *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 781 (9th Cir. 2000) (citing *O'Brien, Inc. v. Sec. & Exch. Comm'n*, 704 F.2d 1065, 1067 n.6 (9th Cir. 1983), rev'd on other grounds (further citation omitted)); *see also Ctr. for Food Safety v. Perdue*, 320 F. Supp. 3d 1101, 1104 (N.D. Cal. 2018) ("Final agency action is a prerequisite to judicial review under the APA."). In addition, agency action requires a specific "rule, order, license, sanction, relief, or the equivalent." 5 U.S.C. § 551(13). This is because the agency action must be a "discrete" act, and a plaintiff may not bring a "broad programmatic attack." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

Under the test first laid out in *Bennett v. Spear*, an agency action is considered "final" if two conditions are met: first, it marks the "consummation" of the agency's decision-making process; and second, the action determines rights or obligations or creates legal consequences. *See Harper v. Werfel*, 118 F.4th 100, 116 (1st Cir. 2025) (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). On *Bennett*'s second prong, courts follow a "pragmatic" approach and determine whether an action is final "based on the concrete consequences an agency action has or does not have as a result of the specific statutes and regulations that govern it." *California Communities Against Toxics v. Env't Prot. Agency*, 934 F.3d 627, 637 (D.C. Cir. 2019) (interpreting *U.S. Army*

*Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016)). The challenged conditions satisfy neither requirement.

The issuance of documents relevant to the administration of a grant or the review of grant applications does not "mark the consummation of the agency's decision making process." None of the terms or conditions here have the hallmarks of a discrete and final decision of the agency. The challenged conditions are, at most, expressions of agency policy and program administration—they reflect the government's interpretation of programmatic parameters under the Ryan White program. None of the challenged conditions in and of themselves terminates a grant, imposes penalties, or determines legal rights or obligations.

Further, in bringing this challenge on behalf of many health care providers and broadly challenging the terms and conditions writ large, Plaintiffs' claims amount to a broad programmatic attack. But this type of challenge is impermissible under the APA. "Because an on-going program or policy is not, in itself, a "final agency action" under the APA, our jurisdiction does not extend to reviewing generalized complaints about agency behavior." *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (cleaned up).

Other courts have found that the issuance of a NOFO does not constitute final agency action. In *Planned Parenthood of Wisconsin*, *Inc. v. Azar*, 316 F. Supp. 3d 291, 304 (D.D.C. 2018), vacated and remanded on other grounds, 942 F.3d 512 (D.C. Cir. 2019), the court held that a Title X NOFO was not final agency action and imposed no legal obligations, on a challenge to the agency's incorporation of similar priorities in scoring grant applications. The court emphasized three determinative facts: "(1) no grants have yet issued under the [NOFO], (2) Title X grant applicants are not legally required to do anything in response to the announced criteria, and (3) the challenged language only governs an intermediate stage in the review process, with results that do

not bind the Deputy Assistant Secretary for Population Affairs, who makes the final award decision." *Id.* at 300. Other circuits agree: grant announcements and NOFOs are not final until the agency completes review and disburses funds. *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007); *Citizens Alert Regarding the Env't v. EPA*, 102 F. App'x 167, 168 (D.C. Cir. 2004). The narrow exception for mandatory grant programs where the agency lacks discretion, *see State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1031–32 (N.D. Cal. 2018), does not apply here. Here, the agency has not dispensed the funds for any of the NOFOs that Plaintiffs challenge. Plaintiffs were not eligible for the only funding that has issued. Furthermore, the NOFOs provide the agency discretion to make grant awards, irrespective of an applicant's score. *See e.g.* ECF 1-3, at 37 (NOFO providing agency discretion to award funding regardless of score). Thus, this case is on all fours with *Planned Parenthood of Wisconsin*, *Inc.* and the Plaintiffs do not challenge a final agency action. 316 F. Supp. 3d at 304.

**E. Plaintiffs' Claims Fall Under The Tucker Act.**

The Tucker Act confers exclusive jurisdiction on the Court of Federal Claims over claims founded on express or implied contracts with the United States exceeding $10,000. 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1346(a)(2) ("district courts shall not have jurisdiction" over such claims). Accordingly, "the Tucker Act impliedly forbids" contract actions against the government under the APA in federal district court. *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004); *see also Glaskin v. Klass*, 996 F. Supp. 67, 72 (D. Mass. 1998). This channels such contract claims to the forum with "unique expertise" in the area. *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985). This prohibition extends to grants are implemented through "contracts to set the terms of and receive commitments from

recipients." *Boaz Housing Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021). [3] Whether a claim "is 'at its essence' contractual turns on "the source of the rights upon which the plaintiff bases its claims, and…the type of relief sought." *Crowley Gov't Srvc., Inc. v. General Services Administration*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). Both factors are satisfied here: (1) Plaintiffs challenge specific terms of contracts with the government; and (2) as relief, Plaintiffs seek to enjoin HRSA from enforcing those terms.

Plaintiffs are all healthcare providers[4] who claim injuries to their medical practices and professional obligations because the challenged conditions "force" them to choose between continuing to provide affirming healthcare and losing "crucial" government support that funds the institutions where they practice. Compl. ¶¶ 214, 256. That some plaintiffs may lack privity with the government does not change the analysis; their alleged injury derives entirely from the proffered terms of the grant agreements and the *Megapulse* test asks about the source of the rights underlying the claim, not whether the plaintiff could independently enforce the contract in the Court of Federal Claims.

[3] Though Plaintiffs style their claims as APA claims or constitutional claims, the First Circuit has held that where "the essence of the [Plaintiffs'] action is in contract," a plaintiff may not evade the Tucker Act's exclusive grant of jurisdiction "by the mystique of a different form of complaint," such as a suit under the APA or constitution. *American Sci. & Eng'g Inc. v. Califano*, 571 F.2d 58, 63 (1st Cir. 1978); *see also Diaz v. Johnson, No. 19-1501,* 2020 U.S. App. LEXIS 42196, at *5 (1st Cir. Nov. 12, 2020) (holding that plaintiff "cannot manufacture an APA claim by asking the court to declare that the failure to fund his proposal was an arbitrary or capricious act").

[4]Plaintiffs argue that the organizational plaintiffs have standing because their members possess standing "for the same reasons Provider Plaintiffs have standing"—that is, because they are providers who are or would be affected by the challenged conditions. Pl. Memo, ECF No. 10, p. 11.

The exchanges of promises under grant agreements constitute government contracts for Tucker Act purposes. *See Massie v. United States*, 166 F.3d 1184, 1188 (Fed. Cir. 1999) ("[A]ny agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government.") (cleaned up). Enjoining enforcement of the terms of the agreement is a contractual remedy regardless of how Plaintiffs frame their requests or that the grants at issue are future awards.

The Supreme Court and Fourth Circuit have recently confirmed this jurisdictional line in the closely analogous context of grant-funding disputes. In *California*, the Court stayed a district court order requiring payment under terminated grants, holding the government was likely to show "the District Court lacked jurisdiction to order the payment of money under the APA." And in *Sustainability Inst. v. Trump*, 165 F.4th 817 (4th Cir. 2026), the Fourth Circuit vacated a district court injunction restoring terminated federal grants, holding the source of the plaintiffs' rights was "contractual in nature," and that the injunction was indistinguishable from classic specific performance, a remedy Congress has not authorized district courts to award against the government in contract disputes. *Id*. at 827-29.

The same logic applies here. Whether Plaintiffs seek to have specific conditions struck or rewritten, the relief they request would still require HRSA to fund and perform under the grant agreements on terms other than those it offered. This is precisely the kind of compelled contractual performance that the Tucker Act channels exclusively to the Court of Federal Claims.

Plaintiffs cannot rely on the *conditions* of grant agreements to establish standing while asking this Court to disregard those same agreements in assessing Tucker Act jurisdiction. Because

Plaintiffs have no claims independent of the grant agreements, and because the relief they seek amounts to compelled performance on modified contractual terms, their claims are contractual at their core and belong in the Court of Federal Claims.

## II. The Court Should Limit the Scope of any Injunctive Relief to Provider Plaintiffs' Specific Grants.

Injunctive relief under the APA is limited. Courts may either "compel agency action unlawfully withheld or unreasonably delayed," or "hold unlawful and set aside agency action." 5 U.S.C. § 706; *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66-67 (2004) (explaining how the "principal purpose" of the APA's limits on relief is to "protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements").

Injunctive relief should not provide "a remedy beyond what [is] necessary to provide relief" to injured parties. *Lewis v. Casey*, 518 U.S. 343, 360 (1996). Accordingly, to the extent the Court is inclined to grant Plaintiffs' request for an injunction, any such relief should be narrowly tailored to apply only to the grants of specific named provider Plaintiffs. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."); *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025) (Congress has not conferred upon federal courts the power to issue universal injunctions). As the Supreme Court cautioned in *CASA*, "complete relief" between the parties "is a narrower concept" than "universal relief." *CASA*, 145 S. Ct. at 2557.

## CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiff's Complaint.

Respectfully submitted:

LEAH B. FOLEY
United States Attorney

By: */s/ Nicole M. O'Connor*
Nicole M. O'Connor
Assistant United States Attorney
United States Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3112
Nicole.O'Connor@usdoj.gov

Dated: August 14, 2026

## 7.1 CERTIFICATION

I, Nicole M. Connor, Assistant U.S. Attorney, hereby certify that I conferred with counsel for Plaintiffs prior to filing this motion. Plaintiffs oppose this motion.

Dated: August 14, 2026

*/s/ Nicole M. O'Connor*
Nicole M. O'Connor
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I, Nicole M. O'Connor, hereby certify that a true copy of the above document was served upon all parties of record via this court's electronic filing system and upon any non-registered parties via regular mail.

Dated: August 14, 2026

*/s/ Nicole M. O'Connor*
Nicole M. O'Connor
Assistant U.S. Attorney