# EXHIBIT G

**Federal Register** / Vol. 90, No. 153 / Tuesday, August 12, 2025 / Presidential Documents **38929**

# Presidential Documents

**Executive Order 14332 of August 7, 2025**

## Improving Oversight of Federal Grantmaking

By the authority vested in me as President by the Constitution and the laws of the United States of America, and to improve the process of Federal grantmaking while ending offensive waste of tax dollars, it is hereby ordered:

**Section 1**. *Purpose.* Every tax dollar the Government spends should improve American lives or advance American interests. This often does not happen. Federal grants have funded drag shows in Ecuador, trained doctoral candidates in critical race theory, and developed transgender-sexual-education programs. In 2024, one study claimed that more than one-quarter of new National Science Foundation (NSF) grants went to diversity, equity, and inclusion and other far-left initiatives. These NSF grants included those to educators that promoted Marxism, class warfare propaganda, and other anti-American ideologies in the classroom, masked as rigorous and thoughtful investigation.

The harm imposed by problematic Federal grants does not stop at propagating absurd ideologies. An unsafe lab in Wuhan, China—likely the source of the COVID–19 pandemic—engaged in gain-of-function research funded by the National Institutes of Health. The NSF gave millions to develop AI-powered social media censorship tools—a direct assault on free speech. Taxpayer-funded grants have also gone to non-governmental organizations that provided free services to illegal immigrants, worsening the border crisis and compromising our safety, and to organizations that actively worked against American interests abroad.

Even for projects receiving Federal funds that serve an ostensibly beneficial purpose, the Government has paid insufficient attention to their efficacy. For example, a significant proportion of the results of federally funded scientific research projects cannot be reproduced by external researchers. Even at Harvard and Stanford, once considered among America's most prestigious universities, senior researchers have resigned following accusations of data falsification. A substantial portion of many Federal grants for university-led research goes not to scientific project applicants or groundbreaking research, but to university facilities and administrative costs.

The grant review process itself also undermines the interests of American taxpayers. Writing effective grant applications is notoriously complex, and grant applicants that can afford legal and technical experts are more likely to receive funds—which can then further support these non-mission functions. In addition, there is insufficient interagency coordination and review by relevant subject matter experts to reduce duplication. As a result, the best proposals do not always receive funding, and there is too much unfocused research of marginal social utility.

In short, there is a strong need to strengthen oversight and coordination of, and to streamline, agency grantmaking to address these problems, prevent them from recurring, and ensure greater accountability for use of public funds more broadly. The Government holds tax revenue in trust for the American people, and agencies should treat it accordingly.

**Sec. 2**. *Definitions.* For purposes of this order:

(a) The term ''agency'' has the meaning given to it in section 551 of title 5, United States Code, except that such term includes only agencies that have the statutory authority to award, offer, or manage Federal grants

and does not include the Executive Office of the President or any components thereof.

(b) The term ''agency head'' means the highest-ranking official or officials of an agency, such as the Secretary, Administrator, Chairman, Director, Commissioners, or Board of Directors, unless otherwise specified in this order.

(c) The term ''Director'' means the Director of the Office of Management and Budget (OMB).

(d) The term ''discretionary award'' or ''discretionary grant'' means a grant that is a ''discretionary award'' as that term is defined in 2 CFR 200.1. It does not include programs where legislation establishes an entitlement to the funds on the part of the recipient, such as block grants; those awarded based on a statutory formula; or disaster recovery grants.

(e) The term ''funding opportunity announcement'' means a ''notice of funding opportunity'' as defined in 2 CFR 200.1, as it pertains to a discretionary award.

(f) The term ''grant'' means any ''grant agreement or grant'' as defined in 2 CFR 200.1, ''cooperative agreement'' as defined in 2 CFR 200.1, or similar award of financial assistance, including foreign assistance awards.

(g) The term ''regulation'' means an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the procedure or practice requirements of an agency, including, without limitation, regulations, interpretative rules, and statements of policy.

(h) The term ''senior appointee'' means an individual appointed by the President, a non-career member of the Senior Executive Service, or an employee encumbering a Senior Level, Scientific and Professional, or Grade 15 position in Schedule C of the excepted service.

**Sec. 3**. *Strengthening Accountability for Agency Grantmaking.* (a) Each agency head shall promptly designate a senior appointee who shall be responsible for creating a process to review new funding opportunity announcements and to review discretionary grants to ensure that they are consistent with agency priorities and the national interest. For the avoidance of doubt, this process shall not guarantee any particular level of review or consideration to funding applicants except as consistent with applicable law. As consistent with applicable law, this review process shall incorporate, at a minimum:

(i) review and approval of agency funding opportunity announcements by one or more senior appointees or their designees;

(ii) continuation of existing coordination with OMB;

(iii) to the extent appropriate to the subject matter of the announcements, review by designated subject-matter experts as identified by the agency head or the agency head's designee;

(iv) review of funding opportunity announcements and related forms to ensure that they include only such requirements as are necessary for an adequate evaluation of the application and are written in plain language with a goal of minimizing the need for legal or technical expertise in drafting an application;

(v) interagency coordination to determine whether the subject matter of a particular funding opportunity announcement has already been addressed by another agency announcement and, if so, whether one of the announcements should be modified or withdrawn to promote consistency and eliminate redundancy;

(vi) for scientific research discretionary grants, review by at least one subject matter expert in the field of the application, who may be a member of the grant review panel, the program officer, or an outside expert; and

(vii) pre-issuance review of discretionary awards to ensure that the awards are consistent with applicable law, agency priorities, and the national

interest, which shall involve in-person or virtual discussion of applications by grant review panels or program offices with a senior appointee or that appointee's designee.

(b) Agency heads shall designate one or more senior appointees to review discretionary awards on an annual basis for consistency with agency priorities and substantial progress. Such review shall include an accountability mechanism for officials responsible for selection and granting of the awards.

(c) Until such time as the process specified in subsection (a) of this section is in place, agencies shall not issue any new funding opportunity announcements without prior approval from the senior appointee designated under subsection (a) of this section, except as required by law.

**Sec. 4**. *Considerations for Discretionary Awards.* (a) Senior appointees and their designees shall not ministerially ratify or routinely defer to the recommendations of others in reviewing funding opportunity announcements or discretionary awards, but shall instead use their independent judgment.

(b) In reviewing and approving funding opportunity announcements and discretionary awards, as well as in designing the review process described in section 3(a) of this order, senior appointees and their designees shall, as relevant and to the extent consistent with applicable law, apply the following principles, including in any scoring rubrics used to assess grant proposals:

(i) Discretionary awards must, where applicable, demonstrably advance the President's policy priorities.

(ii) Discretionary awards shall not be used to fund, promote, encourage, subsidize, or facilitate:

(A) racial preferences or other forms of racial discrimination by the grant recipient, including activities where race or intentional proxies for race will be used as a selection criterion for employment or program participation;

(B) denial by the grant recipient of the sex binary in humans or the notion that sex is a chosen or mutable characteristic;

(C) illegal immigration; or

(D) any other initiatives that compromise public safety or promote anti-American values.

(iii) All else being equal, preference for discretionary awards should be given to institutions with lower indirect cost rates.

(iv) Discretionary grants should be given to a broad range of recipients rather than to a select group of repeat players. Research grants should be awarded to a mix of recipients likely to produce immediately demonstrable results and recipients with the potential for potentially longer-term, breakthrough results, in a manner consistent with the funding opportunity announcement.

(v) Applicants should commit to complying with administration policies, procedures, and guidance respecting Gold Standard Science.

(vi) Discretionary awards should include clear benchmarks for measuring success and progress towards relevant goals and, as relevant for awards pertaining to scientific research, a commitment to achieving Gold Standard Science.

(vii) To the extent institutional affiliation is considered in making discretionary awards, agencies should prioritize an institution's commitment to rigorous, reproducible scholarship over its historical reputation or perceived prestige. As to science grants, agencies should prioritize institutions that have demonstrated success in implementing Gold Standard Science.

(c) Nothing in this order shall be construed to discourage or prevent the use of peer review methods to evaluate proposals for discretionary awards or otherwise inform agency decision making, provided that peer review recommendations remain advisory and are not ministerially ratified,

routinely deferred to, or otherwise treated as de facto binding by senior appointees or their designees. Further, nothing in this order shall be construed to create any rights to any particular level of review or consideration for any funding applicant except as consistent with applicable law.

**Sec. 5**. *Revisions to the Uniform Guidance.* (a) The Director shall revise the Uniform Guidance and other relevant guidance to streamline application requirements and to further clarify and require all discretionary grants to permit termination for convenience, including when the award no longer advances agency priorities or the national interest, but subject to appropriate exceptions, including agreements entered into in furtherance of international trade agreements or those awarded by the Department of Commerce under title XCIX of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116–283), the CHIPS Act of 2022 (Public Law 117–167), or division F of the Infrastructure Investment and Jobs Act (Public Law 117–58).

(b) The Director shall further revise the Uniform Guidance and other relevant guidance to appropriately limit the use of discretionary grant funds for costs related to facilities and administration.

**Sec. 6**. *Implementation and Termination Clauses.* (a) Within 30 days of the date of this order, each agency head shall review the agency's standard grant terms and conditions and submit a report to the Director detailing:

(i) whether the agency's standard terms and conditions for discretionary awards permit termination for convenience and include the termination provisions described in 2 CFR 200.340(a), including the provisions that an award may be terminated by the agency ''if an award no longer effectuates the program goals or agency priorities'' or, in the case of a partial termination by the recipient, if the agency ''determines that the remaining portion of the Federal award will not accomplish the purposes for which the Federal award was made'';

(ii) whether the agency's standard terms and conditions for discretionary foreign assistance awards permit termination based on the national interest; and

(iii) the approximate number of active discretionary awards at the agency, as well as the approximate percentage of funding obligated under those awards that contains termination provisions allowing for termination under the circumstances described in subsection (i) of this section.

(b) Each agency head shall, to the maximum extent permitted by law and consistent with relevant Executive Orders or other Presidential directives, take steps to revise the terms and conditions of existing discretionary grants to permit immediate termination for convenience, or clarify that such termination is permitted, including if the award no longer advances agency priorities or the national interest. Each agency head shall ensure that such terms are included in all future discretionary grants and likewise shall take steps to revise all applicable regulations binding on or incorporated in discretionary grant terms and conditions to require such terms. Agency heads shall take action to incorporate these new terms and conditions into all future amendments to grant awards.

(c) To the extent practicable and consistent with applicable law, agency heads shall insert in future discretionary grant agreements terms and conditions that:

(i) prohibit recipients from directly drawing down general grant funds for specific projects without the affirmative authorization of the agency; and

(ii) require grantees to provide written explanations or support, with specificity, for requests for each drawdown.

**Sec. 7**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

(d) If any provision of this order, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this order and the application of its provisions to any other persons or circumstances shall not be affected thereby.

(e) The costs for publication of this order shall be borne by the Office of Management and Budget.



THE WHITE HOUSE,
*August 7, 2025.*

[FR Doc. 2025–15344
Filed 8–11–25; 11:15 am]
Billing code 3110–01–P