**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

AMERICAN ACADEMY OF HIV MEDICINE, *et al.*,

Plaintiffs,

v.

HEALTH RESOURCES AND SERVICES ADMINISTRATION, *et al.*,

Defendants.

Case No. 26-cv-12638-WGY

**DEFENDANTS' MEMORANDUM IN SUPPORT OF DISMISSAL ON THE MERITS OF PLAINTIFFS' COUNTS I-IV, UNDER 5 U.S.C. § 705 (APA)**

**INTRODUCTION**

Plaintiffs—two health care providers and three membership organizations comprised of health care professionals—bring this action in an attempt to dictate the terms and conditions on which the Health Resources and Services Administration ("HRSA"), an agency within the U.S. Department of Health and Human Services ("HHS"), awards grants under Title XXVI of the Public Health Service Act, established by the Ryan White Comprehensive AIDS Resources Emergency Act of 1990 (the "Ryan White statute" or the "Ryan White program"). The Ryan White program provides medical care to low-income individuals with HIV/AIDS who otherwise might not have access to treatment. Plaintiffs bring Counts I-IV of their Complaint under 5 U.S.C. § 705 (Administrative Procedure Act, or "APA") to prevent the government from enforcing certain terms and conditions that apply to recipients of federal funding under the Ryan White program.

Specifically, Plaintiffs challenge 1) HRSA's fiscal year 2026 General Terms and Conditions (March 11, 2026 version), which apply to all funding administered by HRSA; and 2) certain terms included in Notices of Funding Opportunities ("NOFOs") under the Ryan White program (collectively, the "challenged conditions"). However, Plaintiffs' challenges under the APA to the HRSA's fiscal year 2026 General Terms and Conditions (March 11, 2026 version) and the challenged conditions to the NOFOs must fail under the controlling statutory and case law.

This Court lacks subject matter jurisdiction over Plaintiffs' APA claims because Plaintiffs seek to challenge non-final, non-discrete agency actions that are generally committed to agency discretion by law. The inclusion of terms and conditions in program administration documents does not constitute final agency action. Instead, Plaintiffs' claims are best understood as broad programmatic attacks on the government's priorities, which are impermissible under the APA.

Plaintiffs' claims also fail on their merits. HRSA's actions were lawful because the agency has authority to impose appropriate conditions on its grants. And the conditions imposed here are not arbitrary and capricious. (Count I) Instead, they are consistent with the plain language of the Ryan White program and are designed to ensure that federal funds are used only for the purpose intended by the statute, that is, to provide treatment to individuals suffering from HIV/AIDS who otherwise might not have access to care. The challenged conditions likewise do not exceed statutory authority nor are they not in accordance with law (Count II and Count III), as they do not violate the Affordable Care Act ("ACA"), as the Supreme Court has long recognized a distinction between regulations that impose burdens on health care providers and those that merely reflect Congress's choice not to subsidize certain activities. Only the latter is implicated here, as Plaintiffs may continue to provide gender affirming care to their patients—just not with federal funds from the Ryan White program.

Plaintiffs' claims of violation of the APA due to action contrary to Constitutional rights (Count IV) fare no better. There is no Spending Clause or Appointments Clause implicated here because the Supreme Court has repeatedly stated that mere alleged violation by the Executive of a statute under the APA does not clothe the violation in Constitutional garb. The caselaw is clear that the Executive Branch may set the terms of federal spending. Specifically, agencies have the authority to impose terms and conditions on grant agreements as long as they are consistent with the program statute. *See* 2 C.F.R. § 200.303(b) (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards) (requiring all recipients of federal grants to "[c]omply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award"). *See also South Dakota v. Dole*, 483 U.S. 203 (1987) (holding that the Spending Clause provides Congress authority to "attach conditions on the receipt of federal funds," provided the conditions are unambiguous, related to the grant program, not otherwise unconstitutional, and not coercive)[1]. Within the Ryan White context, for example, the Secretary may require an application under Part C to be "made in such manner, and contains such agreements, assurances, and information as the Secretary determines to be necessary to carry out this part." *See* 42 U.S.C. § 300ff–65.

For these reasons, and as described more fully below, this Court should dismiss Plaintiffs' Complaint as to Counts I-IV, the challenges brought by Plaintiffs under the APA.

## BACKGROUND

### I. Factual Background

[1] And although there has not been an explicit Supreme Court holding on this point yet, by extension, Congress presumably also has the authority to delegate part of its Spending Clause authority to federal agencies that administer grant programs, which would provide agencies the authority to set the terms and conditions of grant agreements consistent with the grant program statute.

The Ryan White statute, codified as amended at 42 U.S.C. §§ 300ff-11 to 300ff-140, was enacted by Congress in 1990 to "provide emergency assistance to localities disproportionately affected by the HIV epidemic and to make financial assistance to States and other public and private nonprofit entities to provide for the development, organization, coordination, and operations of more effective and cost-efficient systems for the delivery of essential services to individuals and families with HIV disease." P.L. 101-318 § 2.

The Ryan White program is administered by HRSA. Compl. ¶ 5. HRSA issues both discretionary and non-discretionary grants and cooperative agreements, as well as other types of awards that constitute federal financial assistance. *See* 2 C.F.R. § 200.1 (Definitions). When federal funds for grants and cooperative agreements are made available by Congress, HRSA prepares and publishes a Notice of Funding Opportunity (NOFO) on grants.gov to advertise the availability of award funds and to solicit applications for awards. *See* 2 C.F.R. § 200.204 (Notices of Funding Opportunities).

On September 15, 2026, HRSA published updated priorities to align with the administration's goals and the President's executive orders.[2] To implement these priorities, HRSA updated its General Terms and Conditions for all subsequent NOFOs. For example, the current version of HRSA's fiscal year 2026 General Terms and Conditions, which apply to all awards issued by HRSA on or after March 11, 2026, provide that, "[a]s a condition of the award, you must ensure that all activities funded under this award are implemented in a manner consistent with HRSA's mission and strategic priorities as authorized by law." ECF No. 1-1, at p. 6. These priorities include "recogniz[ing] that a person's sex as either male or female is unchangeable and determined by objective biology, and to ensure its programs accurately reflect science, including

[2] https://www.hrsa.gov/about/priorities (last visited June 26, 2026).

the biological reality of sex." *See* FN3. These priorities also include ensuring that government funds issued under the Ryan White program are used for purposes of the statute only. *See id.*

Similarly, the challenged NOFOs in connection with the Ryan White program include, for example, the following conditions:

- "if an [AIDS Drug Assistance Program] provides sex hormones, it may only allow such hormones to be dispensed to treat HIV/AIDS or prevent the serious deterioration of health arising from HIV/AIDS, rather than for non-statutory purposes such as specific sex-trait modification procedures." ECF No. 1-1, at p. 6.

- awards "shall not be used to fund, promote, encourage, subsidize, or facilitate . . . denial by the recipient of the sex binary in humans, or the belief that sex is a chosen or mutable characteristic," and warns that applications that do not align with those requirements "will not receive funding to the extent permitted by law and applicable court orders." ECF No. 1-2, at pp. 2-51.

## II. Procedural Background

Plaintiffs filed this action on June 10, 2026, claiming that HRSA's actions to ensure that funding under the Ryan White statute is limited to the scope prescribed by Congress violates the APA, the First and Fifth Amendments, and the Affordable Care Act ("ACA"). Compl., ECF No. 1. The Complaint seeks, among other things, preliminary and permanent injunctive relief enjoining Defendants from "implementing, enforcing, effectuating, or giving effect to the Challenged Conditions[.]" *Id.* at pp. 69-70.

That same day, Plaintiffs filed a Motion for Preliminary Injunction and Preliminary Relief under 5 U.S.C. § 705, broadly asking the Court to enjoin the Challenged Conditions pending resolution of this case. Pl. Motion, ECF No. 9; Pl. Memo, ECF No. 10. Pursuant to Fed. F. Civ. P. 65(a), this Court collapsed Plaintiffs' Motion for Preliminary Injunction and Preliminary Relief with a trial on the merits scheduled for September 23, 2026. Doc. No. 49. The Court then limited the issues at trial to Plaintiffs' claims under the APA, Counts I-IV. Doc. No. 51.

## LEGAL STANDARDS

Ordinarily, the dispositive question in an APA case concerns "not whether the facts set forth in a complaint state a plausible claim but, rather, whether the administrative record sufficiently supports the agency's decision." *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013). "This does not mean, however, that Rule 12(b)(6) can never be in play in an APA [case]." *Id.* at 76 n.4. As the First Circuit has explained, "[s]uch a motion may be appropriate in certain circumstances," including where, as here, "the agency claims that the underlying premise of the complaint is legally flawed (rather than factually unsupported)." *Id.*

At the same time, "the APA's arbitrary-and-capricious standard requires" only that an "agency action be reasonable," and "[j]udicial review under that standard is deferential." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). This standard "deems the agency action presumptively valid provided the action meets a minimum rationality standard." *Sierra Club v. EPA*, 353 F.3d 976, 978 (D.C. Cir. 2004) (citation omitted); *see also Atieh v. Riordan*, 797 F.3d 135, 138 (1st Cir. 2015) (noting narrowness of arbitrary-and-capricious standard and that "a reviewing court 'may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions.'" (quoting *River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009)). Instead, a court determines only whether the agency examined "the relevant data" and articulated "a satisfactory explanation" for its decision, "including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U. S. 29, 43 (1983) (internal quotation marks omitted). The court must confine itself to no more than ensuring that the agency remained "within the bounds of reasoned decisionmaking," *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.*, 462 U. S. 87, 105 (1983).

Change in policy itself, even a long-standing one, does not create a presumption that a new Administration has a particular obligation to justify the new policy as preferable, rather than simply within the realm of reasonable discretion and reasoned decisionmaking. HHS "need not demonstrate to a court's satisfaction that the reasons for [departing from the prior Administration's policies] are *better* than the reasons for [retaining them]." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). After all, a new administration has the authority to reassess and modify agency practices, even those of long standing; to hold otherwise would be to create stasis and thwart policy innovation, even those with which the court might not agree; *Citizens Awareness Network, Inc. v. U.S.*, 391 F.3d 338, 351 (1st Cir. 2004) ("An agency's rules, once adopted, are not frozen in place. The opposite is true: an agency may alter its rules in light of its accumulated experience in administering them.").

## ARGUMENT

1. **APA review is unavailable because the challenged actions are committed to agency discretion by law (Counts I-IV)**

While the APA establishes a waiver of sovereign immunity, 5 U.S.C. §§ 702, 706(1)–(2), the waiver of sovereign immunity is limited. It does not apply in circumstances where "agency action is committed to agency discretion by law." *Id.* § 701(a)(2). Courts have explained that agency action is "committed to agency discretion by law" when a "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," rendering "meaningful judicial review . . . impossible." *Steenholdt v. FAA*, 314 F.3d 33, 638 (D.C. Cir. 2003) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). This is true "even where Congress has not affirmatively precluded review." *Heckler*, 470 U.S. at 830.

"Congress may limit an agency's exercise of enforcement power if it wishes," but only when "it has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion," is there "law to apply" under § 701(a)(2). *Id.* at 833–34. Decisions are "general[ly] unsuitabl[e]" for judicial review when they require "a complicated balancing of a number of factors which are peculiarly within [agency] expertise" or involve how best to spend "agency resources," including whether the agency "is likely to succeed if it acts" and "whether the particular enforcement action requested best fits the agency's overall policies." *Id.* at 831. "The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* at 831–32. Hallmarks of a decision committed to agency discretion include a statute that puts the onus on the agency, not the courts, to apply a standard, *see Webster v. Doe*, 486 U.S. 592, 600 (1988), and general criteria that make it difficult for courts to meaningfully second-guess an agency determination, *see id.*

An agency's determination of how best to allocate and condition appropriated funds to fulfill its legal and policy mandates is discretionary agency action. *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993). In *Lincoln*, the Court explained that there is no waiver of sovereign immunity where agency action requires "a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," including whether "resources are best spent on one program or another; whether it is likely to succeed in fulfilling its statutory mandate; whether a particular program best fits the agency's overall policies; and, indeed, whether the agency has enough resources to fund a program at all." *Id.* (citations omitted). An "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.*

The challenged conditions here are committed to agency discretion by law. The statute contemplates broadly drawn topics and guidelines that would not provide a meaningful rubric for

judicial review. Congress has not provided any "law to apply" with respect to what constitutes "core medical services" and "support services" for individuals living with HIV, 42 U.S.C. §§ 300ff-14(a), 300ff-22, 300ff-51, which is the statutory language that Plaintiffs claim requires the federal government to fund gender affirming care under the program. Consequently, the government's determination of what programming to fund requires a "complicated balancing of a number of factors peculiarly within the agency's expertise." *Heckler*, 470 U.S. at 831. Accordingly, the challenged conditions are within the agency's discretion under *Lincoln*.

**2. APA review is unavailable because HRSA's actions are not discrete, final agency actions. (Counts I-IV)**

APA review is available in most cases only for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. District court review is "inappropriate [where] 'final agency action,' a prerequisite for judicial review, had not yet occurred." *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 781 (9th Cir. 2000) (citing *O'Brien, Inc. v. Sec. & Exch. Comm'n*, 704 F.2d 1065, 1067 n.6 (9th Cir. 1983), rev'd on other grounds (further citation omitted)); *see also Ctr. for Food Safety v. Perdue*, 320 F. Supp. 3d 1101, 1104 (N.D. Cal. 2018) ("Final agency action is a prerequisite to judicial review under the APA."). In addition, agency action requires a specific "rule, order, license, sanction, relief, or the equivalent." 5 U.S.C. § 551(13). This is because the agency action must be a "discrete" act, and a plaintiff may not bring a "broad programmatic attack." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

Under the test first laid out in *Bennett v. Spear*, an agency action is considered "final" if two conditions are met: first, it marks the "consummation" of the agency's decision-making process; and second, the action determines rights or obligations or creates legal consequences. *See Harper v. Werfel*, 118 F.4th 100, 116 (1st Cir. 2025) (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). On *Bennett*'s second prong, courts follow a "pragmatic" approach and determine

whether an action is final "based on the concrete consequences an agency action has or does not have as a result of the specific statutes and regulations that govern it." *California Communities Against Toxics v. Env't Prot. Agency*, 934 F.3d 627, 637 (D.C. Cir. 2019) (interpreting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016)). The challenged conditions satisfy neither requirement.

The issuance of documents relevant to the administration of a grant does not "mark the consummation of the agency's decision making process." None of the terms or conditions here have the hallmarks of a discrete and final decision of the agency. The challenged conditions are, at most, expressions of agency policy and program administration—they reflect the government's interpretation of programmatic parameters under the Ryan White program. None of the challenged conditions in and of themselves terminates a grant, imposes penalties, or determines legal rights or obligations.

Further, in bringing this challenge on behalf of many health care providers and broadly challenging the terms and conditions writ large, Plaintiffs' claims amount to a broad programmatic attack. But this type of challenge is impermissible under the APA. "Because an on-going program or policy is not, in itself, a "final agency action" under the APA, our jurisdiction does not extend to reviewing generalized complaints about agency behavior." *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (cleaned up).

**3. Plaintiffs' Claims Fail On The Merits, Because Defendants' Actions Were Not Arbitrary and Capricious (Count I).**

Plaintiffs' arbitrary and capricious APA claim likewise fails. Judicial review under the arbitrary and capricious standard is "deferential," *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021), and a court must "uphold [even] a decision of less than ideal clarity if the agency's

path may reasonably be discerned." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009) (citation omitted). In *FCC v. Fox*, the Supreme Court upheld an agency action that represented a complete policy shift, even though the agency lacked objective evidence in support of its shift but instead relied on its own discretion and experience. *Id.* at 517-20. Moreover, where Congress shows intent to give an agency discretion to define applicable terms, the agency does not run afoul of the APA when it produces a definition that differs from previous proposals. *See Vanda Pharms., Inc. v. Ctrs. for Medicare & Medicaid Servs.*, 98 F.4th 483, 494, 498 (4th Cir. 2024).

Here, the government provided the reasons for its actions—changes in priorities. *See* ECF. Doc. No. 1-1. Though Plaintiffs disagree with the government's reasons, that does not convert HRSA's actions into those that are arbitrary and capricious. The Plaintiffs, like this court, may not substitute their judgment for that of the agency's. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The updated fiscal year 2026 General Terms and Conditions establish that HRSA undertook a systematic review of the grant awards and the agency's priorities—*i.e.*, the relevant data—to determine whether funding under the Ryan White program comported with statutory requirements and administrative priorities. The APA does not require exhaustive explanation for every action. *Cf. Fox*, 556 U.S. at 514 (no heightened standard); *Ren v. USCIS*, 60 F.4th 89, 93 (4th Cir. 2023) (deferential review). The administrative record ("AR") shows reasoned consideration prior to imposing the challenged conditions in accordance with the applicable law—which satisfies the APA. See, for example, revised consideration of the conditions for approval of applications for funding submitted in accordance with NOFOs, which advised that "all NOFOS must comply with Executive Orders signed by the President to the extent permitted by law," listing some eight in particular, which addressed, inter alia, the funding of gender-affirming care. AR HRSA 0003-0004. This is precisely the sort of opportunity that new

Administrations are afforded to re-assess and re-align policies: "[n]ew administrations are entitled to reevaluate and modify agency practices, even longstanding ones." *People for the Ethical Treatment of Animals v. Dep't of Agric.*, 918 F.3d 151, 158 (D.C. Cir. 2019); *see also State Farm*, 463 U.S. at 42 ("[W]e fully recognize that regulatory agencies do not establish rules of conduct to last forever and that an agency must be given ample latitude to adapt their rules and policies to the demands of changing circumstances." (cleaned up)).

**4. Plaintiffs' Claims Fail on the Merits, Because Defendants' Actions Were Not "Contrary to Law" (Count II)**

The Executive has a constitutional duty to enforce Congressional mandates and does so through its officers and agents. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010). Federal agencies must limit grant expenditures to costs that are authorized under a program statute because unauthorized expenses violate the Appropriations Clause of the Constitution, Art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law"). Also, the Purpose Statute provides that appropriations are only available for the specific purposes for which they were made. *See* 31 U.S.C. § 1301.[3] The Supreme Court also recognizes the fundamental principle that "[t]he established rule is that the expenditure of public funds is proper only when authorized by Congress, not that public funds may be expended unless prohibited by Congress." *See United States v. MacCollom*, 426 U.S. 317, 321 (1976); *see also Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990) (recognizing that payments from the federal treasury are limited to those authorized by statute).

---

[3] As the Government Accountability Office has indicated: "The starting point in applying the purpose statute is that, absent a clear indication to the contrary, the common meaning of the words in the appropriation act and the program legislation it funds governs the purposes to which the appropriation may be applied." GAO, Principles of Federal Appropriations Law, Chapter 3, Fourth Ed. p. 3–11.

To implement this principle, executive branch agencies, such as HHS, have the authority to impose terms on the grants they administer. Indeed, Congress has not only authorized HHS to impose conditions on grant programs but it afforded discretion to the agency to establish the terms of federal award conditions. That is what HHS did here. *See*, *e.g., Planned Parenthood of Wisconsin v. Alex Azar*, 316 F. Supp. 3d 291 (D.D.C. 2018) (upholding HHS-imposed funding priority criteria in a Notice of Funding Opportunity for the Title X grant program, as falling sufficiently within the authority of the Title X statute); *see also Tennessee v. Becerra*, 131 F.4th 350, 360 (6th Cir. 2025) (vacated later by the Supreme Court as moot) (upholding an HHS-imposed grant condition to require Title X grant recipients to provide counseling referrals, due to language in the state providing that "Grants ... made under this subchapter shall be made in accordance with such regulations as the Secretary may promulgate" and "shall be payable ... subject to such conditions as the Secretary may determine to be appropriate").

Contrary to Plaintiffs' allegations, the challenged conditions do not violate the Affordable Care Act. Plaintiffs argue that the challenged conditions create "unreasonable barriers" to the ability of transgender people living with HIV to receive gender-affirming medical care, upset patient/provider communications, and require providers to violate their ethical standards. Compl. ¶¶ 227-232. But the Supreme Court has long made a distinction between regulations that impose burdens on health care providers and their clients and those that merely reflect Congress's choice not to subsidize certain activities. *See Rust v. Sullivan*, 500 U.S. 173, 192 (1991). The *Rust* court applied this principle in the Title X context, rejecting arguments that a rule's limitations on counseling and referrals for abortion impermissibly burdened the doctor-patient relationship by placing restrictions on the patient-doctor dialogue and impeding access to abortion services, *id.* at 202—similar arguments to what Plaintiffs advance here. The Supreme Court underscored that a

government restriction on funding certain activities "is not denying a benefit to anyone, but is instead simply insisting that public funds be spent for the purposes for which they were authorized." *Id.* at 196. So too here.

**5. Plaintiffs' Claims Fail on the Merits Because Defendants' Actions Were Lawful and Did Not Exceed Statutory Authority. (Count III)**

Despite Plaintiffs' allegations, the inclusion of the challenged conditions does not violate the Separation of Powers principle. *See* Compl. ¶ 245. The Constitution grants Congress the power to allocate funds (U.S. Const. art. I, § 8, cl. 1), while simultaneously entrusting the Executive Branch with the responsibility to faithfully execute the laws (U.S. Const. art. II, § 3). Once Congress enacts a funding statute, the Executive's duty is to administer that statute in accordance with its text, purpose, and limitations. Agencies naturally exercise interpretive discretion in determining whether activities fall within or outside a program's scope. *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013). When a statute authorizes funding for programs with specific educational or health objectives, such as providing treatment for HIV/AIDS, the Executive may appropriately interpret those objectives to exclude activities or content that are not aligned with the statutory purpose, including topics not authorized by Congress. The exclusion of gender affirming care like puberty blockers, cross-sex hormones, surgeries, etc. which do not relate to the treatment of HIV/AIDS and fall outside the statutory text constitutes lawful program administration and does not constitute an unconstitutional usurpation of legislative authority. Where Congress has not spoken through statute to require gender-affirming care as part of HIV/AIDS treatment, so that such gender-affirming treatment does not itself fall within the treatment of HIV/AIDS and is not included in the statutory text, such treatment is not required by statute.

By excluding non-statutory treatments from receiving funding under the Ryan White program, HRSA upholds, rather than contradicts, Congressional intent. The crux of the separation of powers doctrine lies in determining whether the Executive has acted within the bounds of statutory authority. In *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952), for example, the Supreme Court ruled that the Executive's seizure of property without statutory authorization was unconstitutional. In this case, unlike *Youngstown*, the agency's exclusion of providing funding for gender affirming care as outlined above constitutes an interpretive act consistent with adhering to the statutory text. Congress did not explicitly include gender affirming care or related treatments within the authorizing language of the Ryan White statute, which is aimed at providing comprehensive treatment for HIV/AIDS to individuals who might otherwise not have access to care. By excluding funding unrelated to this objective, HRSA simply enforces the statute's limitations and declines to fund activities and services that Congress never authorized. This approach respects, and does not violate, the separation of powers. Indeed, this approach is consistent with exercising precisely such discretionary authority Congress has provided the Secretary in, for example, the Ryan White program, where the Secretary may require an application under Part C to be "made in such manner, and contains such agreements, assurances, and information as the Secretary determines to be necessary to carry out this part." *See* 42 U.S.C. § 300ff–65. More generally, HRSA is empowered to act consistently with priorities and goals set forth by its guidance documents and determinations how best to steward the public resources with which it is entrusted. *See, e.g.*, "A Message from the HRSA Administrator: Advancing HRSA's Mission Through Focused, Accountable Action," AR HRSA 0001-0002.

Plaintiffs have not presented any evidence that the Ryan White statute authorizes funding for gender affirming care or related treatment. In the absence of such statutory authorization,

HRSA's decision not to fund such treatments does not constitute the imposition of unauthorized conditions or action contrary to law. Rather, it reflects adherence to Congressional intent and statutory boundaries. As the agency responsible for administering these grants, HRSA has the authority to enforce funding standards that align with statutory objectives. HRSA can establish programmatic guidance to ensure that grantees comply with legislative intent. In *Rust*, the Supreme Court upheld agency regulations prohibiting federally funded family planning programs from providing counseling on abortion. 500 U.S. at 192–200. Similarly, HRSA can decline to fund programming that advances gender affirming care if it determines that such content deviates from the statutory objective of providing treatment for HIV/AIDS. These content-based distinctions do not constitute novel "funding conditions" or conditions contrary to law; rather, they represent programmatic enforcement decisions within the existing statutory framework.

The doctrine of the separation of powers prohibits judicial interference in the Executive's administration of these grants. Ironically, it is the Plaintiffs' theory that would disrupt the constitutional balance. By requesting judicial invalidation of HRSA's discretionary authority, they ask the court to micromanage agency implementation of congressionally enacted programs. However, once Congress grants authority to administer a funding statute, the Executive retains discretion to implement those programs in accordance with statutory boundaries and policy judgments. *Lincoln*, 508 U.S. at 192. Courts have consistently recognized that not every exercise of administrative discretion implicates separation of powers concerns. So long as the agency acts in accordance with statutory authorization and not in defiance of it, the action is constitutionally valid. Excluding non-statutory uses of funds falls within HRSA's permissible administrative action.

**6. Plaintiffs' Claims Fail on the Merits, Because Mere Dispute Over Exercise of Statutory Powers Does Not Render an APA Claim Contrary to Constitutional Right. (Count IV)**

Plaintiffs' "separation of powers" challenges under the APA, as set forth in Claim IV, Complaint, Dkt. 1, ¶¶ 243-246 also fail. To begin with, Plaintiffs' arguments on this score lack any "separation of powers" dimensions. Plaintiffs' separation of powers arguments all allege that HHS violated the separation of powers because it exceeded its statutory authority. See Complaint, ¶¶ 245-46 (arguing that "[b]y adopting and promulgating the Challenged Conditions without any statutory authority, Defendants have violated the separation of powers, and the Challenged Conditions are therefore contrary to constitutional power in violation of the APA" and that by doing so "Defendants acted beyond the power Congress has conferred upon them…." But as the Supreme Court made clear in *Dalton v. Specter*, 511 U.S. 462 (1994), any allegation that Executive Branch officials have exceeded their statutory authority is merely a statutory claim—not a constitutional one. There, the Supreme Court explained that not "every action by the President, or by another executive official, in excess of his statutory authority is ipso facto in violation of the Constitution." *Id*. at 472. "On the contrary, [the Supreme Court] ha[s] often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id*. Indeed, the D.C. Circuit recently rejected a very similar attempt by plaintiffs to endow their statutory claims with constitutional dimension. *See Climate United Fund v. Citibank, N.A.*, 154 F.4th 809, 827 (D.C. Cir. 2025) ("The grantees here allege violations of the statute, not the Constitution, and we decline to adopt a principle that would convert every statutory challenge

to agency action into a constitutional claim.”).[4] For this reason, the APA claim for action contrary to Constitutional right, power, privilege or immunity, brought under Count IV of the Complaint, must also fail on the merits.

**CONCLUSION**

For the reasons set forth above, the Court should dismiss Plaintiffs’ Complaint as to the claims brought under the APA, Counts I-IV.

Respectfully submitted:

By: /s/ --P. R. Goldstone
Peter R. (“P. R.”) Goldstone
(B.B.O. # 682050)
Trial Attorney, Federal Programs Branch
Civil Division
Department of Justice
1100 L Street NW, 11th Floor
Washington, DC 20530
(202) 598-0912
Peter.R.Goldstone@usdoj.gov

Dated: September 8, 2026

**CERTIFICATE OF SERVICE**

I, P. R. Goldstone, hereby certify that a true copy of the above document was served upon all parties of record via this court’s electronic filing system and upon any non-registered parties via regular mail.

Dated: September 8, 2026

/s/ --P. R. Goldstone
Peter R. (“P. R.”) Goldstone
(B.B.O. # 682050)
Trial Attorney, Federal Programs Branch

[4] By contrast, a true separation of powers claim would argue that the President exceeded his Article II authorities in a case where he relied on those powers for the challenged action, and would likely arise under *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) and its progeny, which Plaintiffs do not even cite (let alone satisfy).