**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMERICAN ACADEMY OF HIV MEDICINE; *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>HEALTH RESOURCES AND SERVICES ADMINISTRATION; *et al.*,<br><br>*Defendants*. | Case No. 1:26-cv-12638-WGY |

# PLAINTIFFS' POST-TRIAL BRIEF

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. The Challenged Conditions Impose Unconstitutional Conditions on Ryan White Program Funding that Violate the First Amendment. ..... 1

II. The Court Can and Should Look to Documents Beyond Those Contained in the Administrative Record When Considering Plaintiffs' Claims. ..... 3

III. The Pediatric Gender Dysphoria Report Has No Bearing on this Case, and Any Reliance on the Report Would Nevertheless Be Inherently Arbitrary and Capricious Because the Report Violates the Federal Advisory Committee Act. ..... 7

CONCLUSION ..... 10

CERTIFICATE OF SERVICE ..... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
570 U.S. 205 (2013) .......... 2

*Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Human Serv.*,
557 F.Supp.3d 224 (D. Mass. 2021) .......... 6

*Chiles v. Salazar*,
607 U.S. 627 (2026) .......... 2, 3

*Heartwood, Inc. v. U.S. Forest Serv.*,
431 F.Supp.2d 28 (D.D.C. 2006) .......... 8

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 5

*Nat'l Rifle Ass'n v. Vullo*,
602 U.S. 175 (2024) .......... 2, 3

*New York v. McMahon*,
826 F.Supp.3d 184 (D. Mass. 2026) .......... 6

*New York v. U.S. Dep't of Com.*,
351 F.Supp.3d 502 (S.D.N.Y. 2019),
*aff'd in part, rev'd in part on other grounds, and remanded*, 588 U.S. 752 (2019) .......... 5

*Norwood v. Harrison*,
413 U.S. 455 (1973) .......... 3

*Oak Grove Techs., LLC v. United States*,
155 Fed. Cl. 84 (2021),
*vacated and remanded on other grounds*, 116 F.4th 1364 (Fed. Cir. 2024) .......... 6, 7

*Orr v. Trump*,
No. 1:25-cv-10313-JEK, ECF No. 190 (D. Mass. July 1, 2026) .......... 4

*Pacito v. Trump*,
No. 2:25-CV-255-JNW, 2026 WL 2240195 (W.D. Wash. Aug. 4, 2026) .......... 4

*Puerto Rico Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urban Dev.*,
59 F.Supp.2d 310 (D.P.R. 1999) .......... 4

*Rust v. Sullivan*,
500 U.S. 173 (1991) .......... 2

*Saget v. Trump*,
375 F.Supp.3d 280 (E.D.N.Y. 2019) ..... 5

*Sierra Club v. U.S. Army Corps of Eng'rs*,
No. 20-cv-00396, 2023 WL 4350730 (D. Me. July 5, 2023) ..... 6

*Thompson v. U.S. Dep't of Lab.*,
885 F.2d 551 (9th Cir. 1989) ..... 5

*Union of Concerned Scientists v. Wheeler*,
954 F.3d 11 (1st Cir. 2020) ..... 8

**Statutes**

5 U.S.C. § 1001 ..... 8

5 U.S.C. § 1002(a) ..... 8

5 U.S.C. § 1004(b)(2), (c) ..... 8

5 U.S.C. §§ 1008–09 ..... 9

**Regulations**

41 C.F.R. § 102-3.60(b)(1), (2) ..... 9

**Other Authorities**

ACLU & Lambda Legal, *Comments in Response to Request for Public Comment Regarding "Medicare and Medicaid Programs; Hospital Condition of Participation: Prohibiting Sex-Rejecting Procedures for Children," Docket No. CMS-3481-P* at 25-26 (Feb. 17, 2026), https://tinyurl.com/zebyc6kx ..... 9

Ctrs. for Medicare & Medicaid Servs., *Medicare Evidence Development & Coverage Advisory Committee*, https://tinyurl.com/mpzt7fcs (last visited Sept. 28, 2026) ..... 9

## INTRODUCTION

Following the closing arguments on September 23, 2026, the Court invited the parties to file post-trial briefs, if they wish to do so. *See* Dkt. 80. Plaintiffs have amply addressed why the Challenged Conditions—which prohibit healthcare providers participating in the Ryan White Program from acknowledging, affirming, documenting, or respecting their transgender patients' identities, including by providing medical care for gender dysphoria—are unlawful and violate the Administrative Procedure Act (APA), the Affordable Care Act, and the U.S. Constitution. *See*, *e.g.*, Dkts. 69, 75, 76, 81 ("Trial Tr."). Plaintiffs expressly incorporate these arguments here. Plaintiffs respectfully submit this post-trial brief only to address a few specific questions that were raised during the closing arguments, which merit some additional exposition.

## ARGUMENT

### I. The Challenged Conditions Impose Unconstitutional Conditions on Ryan White Program Funding that Violate the First Amendment.

Defendants effectively conceded that the Challenged Conditions are intended to deny transgender patients participation in the Ryan White Program and to interfere with the doctor-patient relationship by threatening providers who do not share the government's idiosyncratic and discriminatory viewpoint about transgender people. As shown at trial, the Challenged Conditions are not intended to define the spending limits of the Ryan White Program; indeed, the Conditions bear no apparent connection to the program goals at all. Rather, the Conditions are intended to deny transgender people equal participation in public benefit programs writ large, portray acknowledging gender identity as a fraudulent ideology, and, as the Court observed, forbid providers from not only recognizing that transgender people exist but also treating them with dignity in the doctor-patient relationship. Trial Tr. at 31:25-33:7; *see also id.* at 10:7-11:24.

The Court's later colloquy with Defense Counsel is telling:

> THE COURT: And you think that because they did not -- well strike that. Let me ask you this. And I'm asking not to be provocative, I'm asking because I don't know the answer and I'd like to know the answer.
>
> What is the policy that -- and you may be right, I had thought I was supposed to give a capacious interpretation, but you may be right that they didn't spell it out that, um, the gender-affirming care, as the plaintiffs', um, mention it, is not to be reimbursed. I'll accept that. They didn't do that.
>
> So what policy then does the executive order serve where -- and I didn't hear an answer, where it just ignores the existence? Well it more than ignores it. The order of the President of the United States, um, I think fairly read, expresses the view that transgender citizens don't exist. Please tell me I'm wrong.
>
> (Pause.)
>
> MR. GOLDSTONE: I can't.

Trial Tr. at 39:8-25.

This asymmetry—here, permitting speech by providers that rejects the very existence of transgender people while burdening providers' speech that affirms it—is precisely the structure codified in the Challenged Conditions. Thus, "the Government has placed a condition on the *recipient* of the subsidy rather than on a particular program or service." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214, 218–19 (2013) (quoting *Rust v. Sullivan*, 500 U.S. 173, 197 (1991)) (emphasis in original). The Conditions seek to coerce and penalize federal funding recipients, including Provider Plaintiffs and Associational Plaintiffs' members, whose speech, trainings, research, and services acknowledge the existence of transgender people and advocate for their equality and respect. The Supreme Court recently reinforced the principle that controls here: the government violates the First Amendment through coercion of a third party when the government's conduct, in context, could be reasonably understood to convey a threat of adverse government action. *Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175, 191 (2024). *Cf. Chiles v. Salazar* 607

U.S. 627, 655 (2026) ("The First Amendment stands as a shield against any effort to enforce orthodoxy in thought or speech in this country."). *Chiles* confirms that a restriction that permits one side of a debate, while suppressing the other, is unconstitutional viewpoint discrimination—even in a professional setting. *Id*. at 657.

Defendants' efforts to demean transgender people and deny them access to the Ryan White Program have nothing to do with the program's priorities as established by Congress and everything to do with invidious discrimination against a marginalized group this administration disfavors. In seeking to deprive transgender patients—as a class—from accessing Ryan White benefits, the Challenged Conditions threaten the providers whose viewpoint is to respect and care for them. The government cannot do indirectly what it is barred from doing directly: its officials "cannot coerce a private party to punish or suppress disfavored speech on the government's behalf." *Vullo*, 602 U.S. at 190; *see also Norwood v. Harrison*, 413 U.S. 455, 465 (1973) (The government may not contract with "private persons to accomplish what it is constitutionally forbidden to accomplish."). The Challenged Conditions thus violate the First Amendment.

## II. The Court Can and Should Look to Documents Beyond Those Contained in the Administrative Record When Considering Plaintiffs' Claims.

At trial, there was discussion as to whether this Court's review should be confined solely to the documents contained in the administrative record. *See*, *e.g.*, Trial Tr. at 5:17-21. Here, this record consists of the Initial Administrative Record, *see* Trial Exhibit 12; Dkt. 53; the Supplemental Administrative Record, *see* Dkt. 77; and exhibits that the parties stipulated were part of the administrative record but were not included in either of the compilations, *see* Trial Exhibits 2-6, 10-11, 28-29; *see also* Dkt. 63 (noting stipulations).[1] While Plaintiffs would prevail on each

[1] These exhibits are found in the record as follows: Exhibit 2 (Dkt. 1-2; Dkt. 19-2); Exhibit 3 (Dkt. 1-3; Dkt. 19-10); Exhibit 4 (Dkt. 1-4; Dkt. 19-11); Exhibit 5 (Dkt. 47-2); Exhibit 6 (Dkt. 19-4); Exhibit 10 (Dkt. 59-8); Exhibit 11 (Dkt. 59-9); Exhibit 28 (Dkt. 59-10); and Exhibit 29 (Dkt. 59-11).

of their claims if the Court were to limit its review to the administrative record compiled by Defendants, the Court need not narrow its review in such a way.

*First*, Plaintiffs have brought several non-APA claims under the Affordable Care Act and the First and Fifth Amendments to the U.S. Constitution. The Court's evaluation of these claims, to the extent the Court reaches them, should not be limited to the administrative record and should consider Plaintiffs' other exhibits, all of which have been admitted into evidence.[2] *See Pacito v. Trump*, No. 2:25-CV-255-JNW, 2026 WL 2240195, at *3 (W.D. Wash. Aug. 4, 2026) ("[W]here a constitutional claim exists outside of the APA, then the APA's administrative record does not govern the availability of discovery," rather, it is "dependent upon the particular facts of the claims involved." (citation modified)); *Orr v. Trump*, No. 1:25-cv-10313-JEK, ECF No. 190 (D. Mass. July 1, 2026) (noting that parties "may be entitled to discovery on constitutional claims to the extent the facts matter to those claims" even though such claims were brought alongside APA claims); *Puerto Rico Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urban Dev.*, 59 F.Supp.2d 310, 328 (D.P.R. 1999) (authorizing discovery on constitutional and non-APA statutory claims brought alongside APA claims).

*Second*, as Plaintiffs have explained, even in the APA context, courts routinely consider extra-record evidence when presented in connection with claims and circumstances like those at issue here: Where Plaintiffs provide 1) materials demonstrating that Defendants failed to assess and consider reliance interests, important aspects of the problem, their departure from prior policy, or statutory requirements, and 2) materials that show that Defendants' actions stem from a broader pattern of discriminatory animus.

[2] Trial Tr. at 5:22-24; Dkt. 80 (Electronic Clerk's Notes: "The Court addresses exhibits that are not stipulated to in Document # 63. Defendants do not object to the exhibits being admitted into evidence. The exhibits are admitted.")

When a plaintiff argues that the government failed to consider documents that illustrate reliance interests, aspects of the problem, or decades of prior agency guidance and policy, as Plaintiffs do here, courts generally permit "evidence relevant to the substantive merits of the agency decision … to determine whether the agency considered all the relevant factors." *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989); *see also* Dkt. 72 at 4-6 (collecting cases). That is because, in order to assess "whether all relevant factors were examined by an agency, whether the agency ignored an important aspect of the problem, or whether the agency departed from established agency practices," "a court must adequately understand the relevant factors, important aspects of the problem, and the agency's established practices." *Saget v. Trump*, 375 F.Supp.3d 280, 342 (E.D.N.Y. 2019). Furthermore, "without looking to evidence beyond the administrative record … a court may be unable to identify, let alone redress, the most egregious APA violations: those in which the administrative record is carefully cultivated to exclude contrary evidence." *New York v. U.S. Dep't of Com.*, 351 F.Supp.3d 502, 634 (S.D.N.Y.), *aff'd in part, rev'd in part on other grounds and remanded*, 588 U.S. 752 (2019). Thus, a court may rely on extra-record material "to the limited extent that [the defendant] is alleged to have 'entirely failed to consider an important aspect of the problem,' or that such material would further illuminate the issues before the Court." *Id.* at 635–36 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In addition, courts routinely consider extra-record evidence when considering claims of discriminatory animus, as Plaintiffs assert is the case here. Indeed, evidence outside the administrative record may be "appropriate" because "limiting the scope of review to the administrative record makes little sense in the context of an inquiry into illicit animus." *Bos. All.*

*of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Human Servs.*, 557 F.Supp.3d 224, 245 (D. Mass. 2021); *see also* Dkt. 72 at 6-7 (collecting cases).

*Third*, Defendants' handling of the administrative record in this case undermines any presumption of regularity (also known as the presumption of completeness) that would ordinarily apply to an agency's compilation and production of the administrative record. As such, the Court can and should consider extra-record materials, all of which have been admitted as evidence, as relevant and appropriate in considering Plaintiffs' APA claims.

The administrative record "must contain all documents and materials directly or indirectly considered by the agency decisionmakers and includes evidence contrary to the agency's position." *New York v. McMahon*, 826 F.Supp.3d 184, 194 (D. Mass. 2026) (internal quotation marks omitted). This "should include all materials that might have influenced the agency's decision, and not merely those on which the agency relied in its final decision." *Sierra Club v. U.S. Army Corps of Eng'rs*, No. 20-cv-00396, 2023 WL 4350730, at *1 (D. Me. July 5, 2023). Accordingly, "in compiling the administrative record, the government does not possess a unilateral veto over administrative record documents based on a self-serving conclusion that they are not relevant to the … decision under review." *Oak Grove Techs., LLC v. United States*, 155 Fed. Cl. 84, 100 (2021), *vacated and remanded on other grounds*, 116 F.4th 1364 (Fed. Cir. 2024) (affirming imposition of sanctions based on government's handling of the administrative record).

Several factors lead to the conclusion that the record is not entitled to a presumption of regularity. Here, "the government omitted several critical documents from its initial and subsequent administrative record filings." *Oak Grove*, 155 Fed. Cl. at 98-99. As a result, Plaintiffs had to file a motion to complete the record. *See* Dkt. 57. Thereafter, the government stipulated to some of the materials previously omitted being part of the record (*see* Dkt. 63) and the Court

ordered the remaining materials to be produced. *See* Dkt. 78 (Pretrial Conf. Tr.) at 14:20-15:1; *see also* Dkt. 73 (Electronic Clerk's Notes: "The Court hears the parties on # 57 Motion to complete the Administrative Record. The Court grants the motion as modified as stated on the record."). But "Plaintiffs should not have to police the government's filing." *Oak Grove*, 155 Fed. Cl. at 101.

What is more, when the government filed the Supplemental Administrative Record (Dkt. 77), the government did not include several of the documents that it had previously stipulated were part of the record (namely, Trial Exhibits 2-6, 10-11, 28-29); did not include any of the documents ordered to be included as part of the motion to complete; and included a document that was not previously included in the Initial Administrative Record (the "Pediatric Gender Dysphoria Report" at HRSA 0163 – HRSA 0572) and as to which no party sought leave to include as part of the record. Moreover, when the government belatedly produced documents on the evening before trial that had been ordered produced as part of Plaintiffs' motion to complete, the government failed to produce (and to date, has not produced) the documents listed as placeholder Trial Exhibits 19, 21, and 22. *See* Trial Tr. at 6:20-7:10. These failures show "apparent gamesmanship" and "undermine[] trust" in HRSA's decisionmaking. *Oak Grove*, 155 Fed. Cl. at 101.

Accordingly, the Court should not apply a presumption of regularity to the administrative record as produced and should consider extra-record evidence as relevant and appropriate in evaluating Plaintiffs' APA claims.

## III. The Pediatric Gender Dysphoria Report Has No Bearing on this Case, and Any Reliance on the Report Would Nevertheless Be Inherently Arbitrary and Capricious Because the Report Violates the Federal Advisory Committee Act.

As Plaintiffs noted at trial, putting aside the procedural questions as to its inclusion in the administrative record, the Pediatric Gender Dysphoria Report has no bearing on this case. *See* Trial Tr. at 7:11-8:3. It is limited to pediatric treatment for gender dysphoria and thus does not address the Conditions at issue here, which broadly prohibit the recognition of transgender people's

existence. Nor does it address gender-affirming medical care for adults (specifically, hormone therapy), which is the care that is primarily at issue here. Nonetheless, Plaintiffs here address a specific line of inquiry that the Court posed to Defendants during trial. That is whether consideration of the Report would be arbitrary and capricious given the report's apparent failures as it relates to the Federal Advisory Committee Act (FACA), 5 U.S.C. § 1001 *et seq*. *See* Trial Tr. at 34:8-35:19. The Court's observations are correct: leaving aside its irrelevance to this matter, reliance on the Report would be arbitrary and capricious.

*First*, the Pediatric Gender Dysphoria Report was procedurally deficient from the beginning. It was commissioned pursuant to an executive order declaring gender-affirming medical care for minors to be a "dangerous trend" that "must end." HRSA 0132. The Report was thus commissioned with a pre-determined conclusion (condemning gender-affirming medical care for minors) and purpose (ending that care nationally).

*Second*, the Report violated FACA and its disclosure mandates for committees advising federal agencies.[3] FACA authorizes federal agencies to utilize "advisory committees" to furnish "expert advice, ideas, and diverse opinions," though "new advisory committees [that] should be established only when they are determined to be essential" and requires that those committees satisfy the statute's transparency and membership requirements. 5 U.S.C. § 1002(a). These include establishing a charter and holding meetings open to the public. Advisory committees must also be "fairly balanced in terms of the points of view represented and the functions to be performed." 5 U.S.C. § 1004(b)(2), (c). To this end, advisory committees must submit a written plan "identif[ying] the points of view that would promote a fairly balanced advisory committee" and

[3] The Report was established by the President and/or HHS and Defendants seek to use it to justify the Conditions, among other executive actions. It is therefore subject to FACA. *See*, *e.g.*, *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 16 (1st Cir. 2020); *Heartwood, Inc. v. U.S. Forest Serv.*, 431 F.Supp.2d 28, 34–35 (D.D.C. 2006).

recruit members "with demonstrated professional or personal qualifications and experience relevant" to the function of the committee." 41 C.F.R. § 102-3.60(b)(1), (2).

The Report's committee satisfied none of these statutory mandates. It appears that HHS created a "new" committee without justification. HHS maintains an existing advisory committee—the Medicare Evidence Development & Coverage Advisory Committee (MEDCAC)—that provides CMS with an "unbiased and current deliberation of 'state of the art' technology and science."[4] But HHS did not rely on MEDCAC to draft the Report. Nor did it explain why a new committee was "essential."

In addition, the Report's committee failed to satisfy FACA's procedural requirements: The committee has no publicly available charter, failed to hold any public meeting on its findings, and filed no written plan highlighting members' "balanced" perspectives. 5 U.S.C. §§ 1008–09. Rather than assemble a committee of balanced experts, HHS appears to have done the opposite and selected contributors based on their prior publications criticizing gender-affirming medical care. None of the contributors are experts in the diagnosis and treatment of gender dysphoria or research regarding the safety and efficacy of gender-affirming medical care—but nonetheless, all have publicly spoken out against these services.[5] Similar bias and imbalance extended to HHS's post-review solicitation of "peer reviews." The peer reviews supporting the Report were largely solicited from people who had already publicly voiced opposition to the provision of gender-affirming medical care for minors.[6]

---

[4] Ctrs. for Medicare & Medicaid Servs., *Medicare Evidence Development & Coverage Advisory Committee*, https://tinyurl.com/mpzt7fcs (last visited Sept. 28, 2026).

[5] *See* ACLU & Lambda Legal, *Comments in Response to Request for Public Comment Regarding "Medicare and Medicaid Programs; Hospital Condition of Participation: Prohibiting Sex-Rejecting Procedures for Children," Docket No. CMS-3481-P* at 25-26 (Feb. 17, 2026), https://tinyurl.com/zebyc6kx.

[6] *See id.* at 26.

The disregard of FACA and its protections for balanced decision-making fatally undermines any reliability of the Pediatric Gender Dysphoria Report. Accordingly, to the extent Defendants relied on the Report in adopting the Challenged Conditions, such reliance renders the Conditions arbitrary and capricious.

## CONCLUSION

For the reasons set forth herein, in Plaintiffs' other briefing (*see* Dkts. 69, 75, 76), and those articulated at trial (Dkt. 81), the Court should enter judgment for Plaintiffs on each of their claims.

Dated this 30th day of September 2026.

Respectfully submitted,

*/s/ Omar Gonzalez-Pagan*


Omar Gonzalez-Pagan (BBO No. 678517)
José I. Abrigo*
Jessica Polansky (BBO No. 663750)
Charlie Ferguson*
**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, New York 10005
Telephone: 212-809-8585
Facsimile: 855-535-2236
ogonzalez-pagan@lambdalegal.org
jabrigo@lambdalegal.org
jpolansky@lambdalegal.org
cferguson@lambdalegal.org

Kenneth D. Upton, Jr.*
**Lambda Legal Defense and Education Fund, Inc.**
3656 North Halsted Street
Chicago, Illinois 60613
Telephone: 312-663-4413
Facsimile: 855-535-2236
kupton@lambdalegal.org

Jeffrey S. Trachtman*
Jason M. Moff*
Stephen P. Ferguson*
Hannah Kanter*
**Herbert Smith Freehills Kramer (US) LLP**
1177 Avenue of the Americas
New York, New York 10036
Telephone: 212-715-9100
Jeffrey.Trachtman@hsfkramer.com
Jason.Moff@hsfkramer.com
Stephen.Ferguson@hsfkramer.com
Hannah.Kanter@hsfkramer.com

Ryan P. Trumbauer*
**Herbert Smith Freehills Kramer (US) LLP**
2000 K Street NW, 4th Floor
Washington, DC 20006
Telephone: 202-775-4500
Ryan.Trumbauer@hsfkramer.com


* Admitted *pro hac vice*.

Pelecanos*
**Lambda Legal Defense**
**and Education Fund, Inc.**
800 South Figueroa Street, Suite 1260†
Los Angeles, California 90017
Telephone: 213-382-7600
Facsimile: 855-535-2236
pelecanos@lambdalegal.org

† Mailing address only

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that, on September 30, 2026, I filed the foregoing document electronically with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to the registered participants as identified in the Notice of Electronic Filing (NEF), including the following counsel:

Peter R. ("P.R.") Goldstone
Trial Attorney, Federal Programs Branch, Civil Division
Department of Justice
1100 L Street NW, 11th Floor
Washington, DC 20530
Peter.R.Goldstone@usdoj.gov

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan (BBO No. 678517)
**Lambda Legal Defense**
**and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, New York 10005
Telephone: 212-809-8585
Facsimile: 855-535-2236
ogonzalez-pagan@lambdalegal.org